964 A.2d 878

ALLEGHENY INSPECTION SERVICE, INC. and
Steel City Inspection Agency, Inc., Appellees

v.

NORTH UNION TOWNSHIP and K2
Engineering, Inc., Appellants.

Allied Building Inspections,

v.

Township of Millcreek and Building Inspection
Underwriters of Pennsylvania, Inc.,

v.

Fairview Township and Harborcreek Township

Appeal of Building Inspection Underwriters
of Pennsylvania, Inc.

Allied Building Inspections,

v.

Township of Millcreek and Building Inspection
Underwriters of Pennsylvania, Inc.,

v.

Fairview Township and Harborcreek Township

Appeal of Township of Millcreek, Fairview
Township and Harborcreek Township.

Nos. 16 WAP 2007, 17 WAP 2007, 18 WAP 2007.

Supreme Court of Pennsylvania.

Argued March 3, 2008.

Decided Feb. 20, 2009.

Mark Neff, Esq., Stephen John Poljak, Esq., Marshall, Dennehey, Warner, Coleman & Goggin, P.C., Pittsburgh; Donald J. McCue, Esq., McCue & Husband Law Firm, for North Union Township (16 WAP 2007).

Daniel Scott Soom, Esq., for K2 Engineering, Inc. (16 WAP 2007).

Thomas L. Wenger, Esq., Wix, Wenger & Weidner, P.C., Harrisburg, for amicus curiae, Pennsylvania State Association of Township Supervisors (16 WAP 2007).

Charles M. Means, Esq., Mandi Lea Scott, Esq., Goehring, Rutter & Boehm, Pittsburgh, for amicus curiae Pennsylvania State Association of Township Commissioners (16 WAP 2007).

Ronald Lee Hicks, Jr., Esq., Stacey Marie Noble, Esq., Meyer, Unkovic & Scott, Pittsburgh, for amicus curiae Pennsylvania Association of Building Code Officials (16 WAP 2007).

David Furer Toal, Esq., for Allegheny Inspection Service, Inc., et al. (16 WAP 2007).

Loudon L. Campbell, Esq., Matthew David Coble, Esq., Eckert Seamans, Cherin & Mellott, L.L.C., Harrisburg, for amicus curiae Pennsylvania Builders Association (16 WAP 2007).

Shawn Thomas Flaherty, Esq., William Francis Rogel, Esq., Flaherty Fardo, L.L.C., Pittsburgh, for amicus curiae Allied Building Inspections (16 WAP 2007).

Matthew James McLaughlin, Esq., Ridge & McLaughlin, Joseph S. Berarducci, Esq. Erie, for Building Inspection Underwriters of Pennsylvania, Inc., (17 WAP 2007).

Thomas L. Wenger, Esq., Wix, Wenger & Weidner, P.C., Harrisburg, for amicus curiae Pennsylvania State Association of Township Supervisors (17 WAP 2007).

Paul F. Burroughs, Esq., Quinn, Buseck, Leemhuis, Toohey & Kroto, Inc., Erie, for Fairview Township (17 WAP 2007).

Shawn Thomas Flaherty, Esq., William Francis Rogel, Esq., Flaherty Fardo, L.L.C., Pittsburgh, for Allied Building Inspections (17 WAP 2007).

Evan E. Adair, Esq., Erie, for Township of Millcreek (17 WAP 2007).

Robert C. Ward, Esq., for Harborcreek Township (17 WAP 2007).

Loudon L. Campbell, Esq., Matthew David Coble, Esq., Eckert Seamans Cherin & Mellott, L.L.C., Harrisburg, for amicus curiae Pennsylvania Builders Association (17 WAP 2007).

David Furer Toal, Esq., for amicus curiae Allegheny Inspection Service, Inc., et al. (17 WAP 2007).

Paul F. Burroughs, Esq., Quinn, Buseck, Leemhuis, Toohey & Kroto, Inc., Erie, for Fairview Township (18 WAP 2007).

Robert C. Ward, Esq., for Harborcreek Township (18 WAP 2007).

Evan E. Adair, Esq., Erie, for Township of Millcreek, et al. (18 WAP 2007).

Thomas L. Wenger, Esq., Harrisburg, for amicus curiae Pennsylvania State Association of Township Supervisors (18 WAP 2007).

Shawn Thomas Flaherty, Esq., William Francis Rogel, Esq., Flaherty Fardo, L.L.C., Pittsburgh, for Allied Building Inspections (18 WAP 2007).

Joseph S. Berarducci, Esq., Erie, for Building Inspection Underwriters of Pennsylvania, Inc. (18 WAP 2007).

Loudon L. Campbell, Esq., Matthew David Coble, Esq., Eckert Seamans Cherin & Mellott, L.L.C., Harrisburg, for amicus curiae Pennsylvania Builders Association (18 WAP 2007).

David Furer Toal, Esq., for Allegheny Inspection Service, Inc., et al. (18 WAP 2007).

BEFORE: CASTILLE, C.J., and SAYLOR, EAKIN, BAER, TODD and McCAFFERY, JJ.

## *OPINION*

Justice BAER.

We granted review of these three related cases to consider whether municipalities that opt to enforce the Pennsylvania Construction Code Act (PCCA), 35 P.S. § 7210.101, *et seq.*, may designate one entity to administer, enforce, and conduct

all plan review and inspections mandated by the PCCA to the exclusion of other construction code officials. Trial courts in Erie and Fayette County determined that the plain language of the relevant PCCA provisions allowed municipalities to employ third-party agencies to perform all the inspections necessary for PCCA compliance, and thereby exclude other construction code officials from PCCA compliance inspections. The Commonwealth Court reversed the Fayette County trial court in a published decision and the Erie County court in an unpublished memorandum, concluding that the trial court decisions were inconsistent with a section of the PCCA that prohibited municipalities from preventing any construction code official from conducting inspections. We conclude that the plain language of the PCCA, as currently enacted, permits municipalities to employ a third-party agency to conduct all PCCA compliance inspections to the exclusion of other construction code officials. We observe, however, that the other construction code officials are not prevented from conducting inspections for purposes other than PCCA compliance.

The PCCA was adopted in 1999 with the purpose of insuring "uniform, modern construction standards and regulations throughout this Commonwealth," to address the lack of construction codes in some municipalities and conflicting codes in others. 35 P.S. § 7210.102. It became effective in April 2004 after the Department of Labor and Industry ("the Department") promulgated regulations adopting the Uniform Construction Code (UCC), 34 Pa.Code § 401.1 *et seq.*

As is relevant to this appeal, under Section 501 of the PCCA, 35 P.S. § 7210.501, municipalities were required to adopt the UCC as their municipal building code, and had several options regarding the administration and enforcement of the PCCA.[1] First, the municipality could designate an

1. In relevant part, Section 501 provides:
   (b) Municipal administration and enforcement.-This act may be administered and enforced by municipalities in any of the following ways:
   (1) By the designation of an employee to serve as the municipal code official to act on behalf of the municipality for administration and enforcement of this act.

employee to serve as a municipal code official[2] to enforce the act, 35 P.S. § 7210.501(b)(1). Second, a municipality could "administer and enforce" the PCCA "[b]y the retention of one or more construction code officials or third-party agencies to act on behalf of the municipality for administration and enforcement of this act." 35 P.S. § 7210.501(b)(2) (hereinafter, "Third–Party Agency Administration Subsection").[3] Third, two or more municipalities could band together to provide for joint administration and enforcement. 35 P.S. § 7210.501(b)(3) (hereinafter, "Joint Administration Subsection"). Fourth, a municipality could contract with another municipality to use that municipality's enforcement authority,

(2) By the retention of one or more construction code officials or third-party agencies to act on behalf of the municipality for administration and enforcement of this act.

(3) Two or more municipalities may provide for the joint administration and enforcement of this act through an intermunicipal agreement under 53 Pa.C.S. Ch. 23 Subch. A (relating to intergovernmental cooperation).

(4) By entering into a contract with the proper authorities of another municipality for the administration and enforcement of this act. When such a contract has been entered into, the municipal code official shall have all the powers and authority conferred by law in the municipality which has contracted to secure such services.

(5) By entering into an agreement with the department for plan reviews, inspections and enforcement of structures other than one-family or two-family dwelling units and utility and miscellaneous use structures.

35 P.S. § 7210.501(b).

**2.** A "municipal code official" is defined as "[a]n individual employed by a municipality or more than one municipality and certified by the Department of Labor and Industry under this act to perform plan review of construction documents, inspect construction or administer and enforce codes and regulations under this act or related acts." 35 P.S. § 7210.103

**3.** A "third-party agency" is defined by the PCCA as "[a] person, firm or corporation certified by the Department of Labor and Industry as a construction code official and contracted to perform plan review of construction documents, inspect construction or administer and enforce codes and regulations under this act," and a "construction code official" is defined as "an individual certified by the Department of Labor and Industry in an appropriate category established pursuant to section 701(b) of this act to perform plan review of construction documents, inspect construction or administer and enforce codes and regulations in such code category under this act or related acts." 35 P.S. § 7210.103 (footnote omitted).

35 P.S. § 7210.501(b)(4). Finally, a municipality could enter into an agreement with the Department of Labor and Industry to provide plan review, inspections, and enforcement of certain buildings. Conversely, a municipality could opt-out of the administration and enforcement of the PCCA so long as it notified an applicant for a construction permit of the statutory procedures for obtaining the necessary plan review and inspection services. 35 P.S. § 7210.501(e).[4] Municipalities had

4. The PCCA provides the following option for opt-out municipalities:

(e) Nonmunicipal administration.—

(1) In municipalities which have not adopted an ordinance for the administration and enforcement of this act, it shall be the duty of the municipality to notify an applicant for a construction permit that it shall be the responsibility of the permit applicant of one-family or two-family dwelling units and utility and miscellaneous use structures to obtain the services of a construction code official or third-party agency with appropriate categories of certification to conduct the plan review and inspections. For one-family and two-family dwelling units and utility and miscellaneous use structures, all of the following five inspections shall be required:

(i) Foundation inspection.

(ii) Plumbing, mechanical and electrical inspection.

(iii) Frame and masonry inspection.

(iv) Wallboard inspection.

(v) Final inspection. The final inspection shall not be deemed approved until all previous inspections have been successfully completed and passed.

(2) In municipalities which have not adopted an ordinance for the administration and enforcement of this act, it shall be the duty of the municipality to notify the department and an applicant for a construction permit that it shall be the responsibility of the owner of structures other than one-family or two-family dwelling units and utility and miscellaneous use structures to obtain the services of the department or a third-party agency with appropriate categories of certification under contract to the department to conduct the plan review and inspections required by this act.

(3) A copy of the final inspection report shall be sent to the property owner and to the builder and to a lender designated by the builder.

(4) In municipalities which require a building permit or a certificate of occupancy but do not conduct inspections, the code administrator shall also be required to submit a copy of the report to the municipality. No certificate of occupancy shall be issued for a building unless it meets all of the applicable accessibility provisions of the Uniform Construction Code or has been granted a variance for the requirements it does not meet. A certificate of partial occupancy may be issued if the space to be occupied complies with the accessibility requirements contained in the Uniform Construction Code unless a variance for the space has been obtained in accordance with this act.

35 P.S. § 7210.501.

to choose an option within ninety days of the adoption of the regulations by the Department, pursuant to 35 P.S. § 7210.501(a)(2).

The question raised by this case is whether a municipality that opts to enforce and administer the PCCA through the Third–Party Agency Subsection can enter into a contract providing authority for a third-party agency to perform all PCCA compliance inspections, and thus to refuse to accept inspections for PCCA compliance purposes performed by construction code officials not working for or through the contracted-with third-party agency. The Commonwealth Court concluded that municipalities were prohibited from contracting with one third-party agency to the exclusion of all other construction code officials due to the PCCA's provision that "[n]othing in this act shall allow a municipality to prohibit a construction code official who meets the requirements of Chapter 7 and remains in good standing from performing inspections in the municipality." 35 P.S. § 7210.501(d), (hereinafter referenced by its title "Registration Subsection," see *infra* at 888 for full text).

In the cases at bar, the municipalities chose to contract with third-party agencies to administer and enforce the PCCA. In the Fayette County case, North Union Township enacted an ordinance adopting the UCC and, on July 14, 2004, entered into a contract with K2 Engineering, one of the Appellants herein, to administer and enforce the PCCA. Pursuant to the contract, the township specified that it would only recognize, for purposes of PCCA compliance, those inspections performed by K2 and not by other construction code officials, such as those employed by Appellees Allegheny Inspection Services, Inc. and Steel City Inspection Agency, Inc., hereinafter, "Fayette County Plaintiffs."

Fayette County Plaintiffs filed a declaratory judgment action in the Fayette County Court of Common Pleas seeking a declaration that the Registration Subsection forbids municipalities from excluding any construction code official from performing PCCA compliance inspections. The court bifurcated the liability and damages phases of the trial, and the parties

submitted a joint stipulation of fact and then presented argument before the trial judge pertinent only to the liability phase. The trial court observed that the Third–Party Agency Administration Subsection specifically and unambiguously permits municipalities to retain "one or more construction code officials or third-party agencies to act on behalf of the municipality for administration and enforcement of this act." 35 P.S. § 7210.501(b)(2). Thus, the court opined that the words of the statute were clear and free from ambiguity and allowed the township to employ one third-party agency to administer and enforce the act, and concomitant thereto, to conduct all inspections incident to code compliance. Further, the court concluded that the agreement between the municipality and the third-party agency did not violate the Registration Subsection because the construction code officials, including the Fayette County Plaintiffs, could still perform inspections, just not inspections for purposes of code compliance.

Similarly, in Erie County in 2003, Millcreek Township entered into an agreement with Harborcreek Township and Fairview Township to contract with a single third-party agency to administer and enforce the PCCA for the three townships in conformance with the Third–Party Agency Administration Subsection and the Joint Administration Subsection. In April 2004, the townships requested proposals for the position of third-party agency to perform PCCA plan review, inspection, and administration and enforcement services for the townships. Both Building Inspection Underwriters of Pennsylvania, Inc. (BIU) and Allied Building Inspectors submitted proposals to be the third-party agency for the townships. In the summer of 2004, the townships enacted ordinances to adopt the UCC and indicate their intent to enforce and administer the PCCA through the use of a third-party agency.[5] Additionally, the townships chose BIU as their

5. For example, the Millcreek ordinance provided:

3.01 *UCC Administration All services pertaining to* review and approval of construction plans, UCC application for permits, *inspection of construction*, consideration of requests for variances or extensions of time under the UCC, administrative enforcement of the UCC and this Ordinance, issuance of a UCC certificate of occupancy, notices to

third-party agency No challenges were filed against the ordinances despite provisions affording the opportunity to challenge, 35 P.S. § 7210.503(j)(1).

Nevertheless, in November 2004, the losing agency, Allied Building (hereinafter, "Erie County Plaintiff"), filed a declaratory judgment action against Millcreek Township and BIU in the Erie County Court of Common Pleas seeking the same relief as the Fayette County Plaintiffs sought in Fayette County. Harborcreek and Fairview Township sought and were granted intervention as parties to the contract. The Townships and BIU then filed motions for summary judgment. The Erie County trial court, like the Fayette County trial court, concluded that the language of Third–Party Agency Administration Subsection clearly provided for the employment of a single third-party agency for administration and enforcement services that necessarily included inspections for code compliance, and that the provision did not conflict with the Registration Subsection because other construction code officials could perform other types of inspections. The court accordingly granted summary judgment to the Townships and to BIU.

The Erie and Fayette County Plaintiffs appealed to the Commonwealth Court. An unanimous *en banc* panel of that court addressed the Fayette County case in a published opinion, *Allegheny Inspection Service, Inc. and Steel City Inspection Agency, Inc. v. North Union Township and K2 Engineering, Inc.*, 912 A.2d 380 (Pa.Cmwlth.2006). The court resolved the Erie County case in an unpublished decision, relying upon the published Fayette County decision. Accordingly, we will address in detail only the published decision.

the Township's Zoning Administrator and representation in proceedings before the board of appeals and, as witness(es), in civil or criminal enforcement proceedings prosecuted by the Township *shall be performed by the building code officials(s), construction code official(s) and other persons employed or contracted by the firm retained by the Township under written contract to provide such services.* The Township shall not perform any such services itself or through its employees.
Millcreek Township Ordinance 2004–9 (emphasis added).

Rejecting the analysis of the trial courts, which concluded that the third-party agency could exclusively perform all inspections for PCCA compliance because inspection was encompassed within "administration and enforcement," as used in Third–Party Agency Administration Subsection, the Commonwealth Court concluded that the statutory duties of "administration and enforcement" were distinct from the duty of inspection. *Allegheny Inspection Service, Inc.*, 912 A.2d at 384. Focusing on the word "or," the Commonwealth Court noted that the PCCA provides that a "third-party agency" may "perform plan review of construction documents, inspect construction *or* administer and enforce codes and regulations under this act." 35 P.S. § 7210.103 (emphasis added). The Commonwealth Court then observed that the Third–Party Agency Administration Subsection, granting the municipality the authority to hire a third-party agency, provided that the third-party agency could perform administration and enforcement, without mention of inspection. Accordingly, the Commonwealth Court rejected the conclusions of the trial court that "administration and enforcement" in Third–Party Agency Administration Subsection necessarily included the performance of compliance inspections.

Instead, in order to give effect to both the Third–Party Agency Administration Subsection, which provides for the employment of a single third-party agency for administration and enforcement of the PCCA, and the Registration Subsection, which forbids municipalities from prohibiting construction code officials from performing inspections, the Commonwealth Court concluded that "administration and enforcement" does not include "inspection." Rather than considering the terms in light of the subject matter of the statute, the court turned to generic dictionary definitions of administration, enforcement, and inspection and determined that they constituted different functions.[6] The court concluded,

**6.** The court relied upon the following definitional analysis:
[W]e note that: "administration" is defined as "[t]he management or performance of the executive duties of a government, institution, or business," "enforcement" is defined as "[t]he act or process of compelling compliance with a law, mandate, command, decree, or

[The Third–Party Agency Administration Subsection] of the PCCA authorizes a municipality to retain a particular construction code official or third-party agency to act on its behalf *only* for "administration and enforcement" of the PCCA; at the same time, [the Registration Subsection] of the PCCA provides that a municipality may not prohibit a qualified construction code official from performing "inspections" in the municipality. Thus, read together, these sections of the PCCA necessarily disallow the present agreement between the Township and K2.

*Allegheny Inspection Service, Inc.*, 912 A.2d at 385 (internal citations and footnotes omitted, emphasis in original). Accordingly, the court rejected the trial court's plain language analysis: "By failing to recognize that construction inspections for purposes of the UCC are a function *separate and distinct* from the administration and enforcement of UCC regulations, the trial court misinterprets [the Registration Subsection] of the PCCA and renders the express prohibition in that section a nullity." *Id.* at 385 (emphasis in original).

The court found "wholly illusory" the trial courts' determination that other construction code officials could perform other types of inspections: "Because an electrical inspection that is unacceptable for the purpose of issuing a municipal permit is meaningless, and a permit applicant with such an inspection still must obtain and pay for the inspection services of [the third-party agency], it follows that, realistically, no person or contractor will hire and pay [Plaintiffs and others similarly situated] to perform such inspections." *Id.* at 385–386 (footnotes omitted). The Commonwealth Court then looked to the intent and purpose of the PCCA to protect the public through uniform construction standards, and rejected the argument that the public would not be protected if the municipality did not designate the third-party agency to perform all the compliance inspections:

> agreement," and "inspection" is defined as "[a] careful examination of something ... (to determine ... fitness....)." As evidenced by these definitions, each word implicates a different action.
> *Allegheny Inspection Service, Inc.*, 912 A.2d at 385, n. 10 (internal citations omitted).

Contrary to [the Townships and Third–Party Agencies'] assertion, accepting inspections performed by any certified inspector for purposes of compliance with the UCC fully satisfies the PCCA's purpose, even if that inspector is a "total stranger." In fact, where the General Assembly voiced its intent to insure the integrity of building inspections for the purpose of issuing municipal permits, allowing a municipality to establish a single entity to serve both as inspector for purposes of compliance with the UCC and as enforcer of UCC standards would run counter to that intent.

*Id.* at 386 (internal footnote and citations omitted).

The Townships and the Third–Party Agencies filed petitions for allowance of appeal, which this Court granted. As the parties filed extensive briefs supported by numerous *amici curiae,* we will summarize the arguments on each side without distinguishing the individual briefs.[7]

The Appellant Townships and Third–Party Agencies argue that the Commonwealth Court erred in determining that the interaction of the Third–Party Agency Administration Subsection and the Registration Subsection prohibit a municipality from retaining a third-party agency to perform all code compliance inspections to the exclusion of other construction code officials. In contrast, they propose that the plain language of the Third–Party Agency Administration Subsection permits municipalities to employ "one . . . third-party agenc[y] to act on behalf of the municipality for administration and enforcement," 35 P.S. § 7210.501(b)(2), which, they contend, includes

7. Although we do not distinguish between the individual parties' arguments, we note the well-crafted briefs presented by the Fayette County parties: Appellants K2 Engineering, Inc., North Union Township, and their *amici* the Pennsylvania Association of Building Code Officials, the Pennsylvania State Association of Township Commissioners, and the Pennsylvania State Association of Township Supervisors; and Appellees Allegheny Inspection Service, Inc., and Steel City Inspection Agency, Inc. and their *amicus* Pennsylvania Builders Association. Similarly, we thank the Erie County parties: Appellants Building Inspection Underwriters of Pennsylvania, Inc., the Townships of Millcreek, Fairview and Harborcreek, and their *amicus* Pennsylvania State Association of Township Supervisors, and Appellees Allied Building Inspections and their *amici* Allegheny Inspection Service, Inc. and the Pennsylvania Builders Association.

the performance of inspections for code compliance purposes. Moreover, Appellants reject the significance that the Commonwealth Court placed on the word "or" in the definition of a third-party agency. Rather than signifying mutually exclusive activities of plan review, inspection, and administration/enforcement, the Townships and Third–Party Agencies assert that the functions are intrinsically intertwined because enforcement cannot occur without inspection. Indeed, Appellants argue a municipality cannot perform the enforcement function unless it can designate and supervise those who perform the inspections for code compliance.[8]

Appellants next consider the Registration Subsection. The Townships and Third–Party Agencies interpret the Registration Subsection not to require third-party agencies to accept any construction code officials' inspections for purposes of code compliance, but instead to forbid municipalities from prohibiting construction code officials from performing other types of inspections. Noting that the Registration Subsection is entitled "Registration," they assert that the subsection is aimed at preventing municipalities from imposing residency, training, or other eligibility requirements on code officials certified by the Department. Rather than requiring municipalities to accept inspections for code compliance purposes from any construction code official, the Townships and Third–Party Agencies view the Registration Subsection as prohibiting the intrusion of municipalities into the registration functions of the Department.

The Townships and Third–Party agencies highlight that the legislature is considering an amendment to the Registration

8. In the extensive briefs, the Townships, the Third–Party Agencies, and their *amici* present additional arguments that the Department's regulations and legislative history suggest that inspection is integral to enforcement. They also assert that the Commonwealth Court's interpretation of the statute would obviate the distinction between opt-in and opt-out municipalities and the incentive for entities to bid to become third-party agencies. Additionally, they rebut the Plaintiffs' suggestion that their interpretation of the statute will lead to monopolistic third-party agencies that will increase construction costs through lack of competition. As our conclusion is based on a plain reading of the statute, we will not address these alternative arguments.

Provision that would clearly provide for the Commonwealth Court's conclusion. The proposed amendment changes the title from "Registration" to "Inspections" and explicitly requires third party agencies to accept inspection reports of any construction code official: "(d) Inspections.-Any third party agency which is administering and enforcing the Uniform Construction Code for a municipality shall accept the inspection reports of any construction code official." [9] House Bill 1763 of 2007, P.N. 2359 (referred to committee on local government, July 17, 2007). Appropriately, the Townships and Third–Party Agencies emphasize that this language has not been adopted, and instead, serves as a stark contrast to the current language, which they argue does not prevent the third-party agency from performing all inspections for code compliance. *See McDowell v. Good Chevrolet–Cadillac, Inc.*, 397 Pa. 237, 154 A.2d 497, 501 (1959) (holding failure to enact amendment significant to construing act).

Finally, addressing the public policy implications of allowing third-party agencies to conduct all code compliance inspections, the Townships and Third–Party Agencies assert that their contract furthers the purposes of the Act by ensuring a speedy inspection system through a contractual mandate that all inspections occur within twenty-four hours of a request for an inspection. The Townships and Third–Party Agencies contend that their interpretation furthers the purpose of providing safe construction across the Commonwealth, whereas under the Commonwealth Court's interpretation, safety might be sacrificed if the third-party agency had to accept and "rubber-stamp" any inspections performed by independent construction code officials. Appellants allege that the Commonwealth Court's analysis would result in inspectors being on the payroll of the builder rather than the municipality, which would create the potential for biased inspectors and

9. The legislation would also amend the Third–Party Agency Subsection to provide that the municipalities cannot hire one third-party entity but instead may administer and enforce the act "[b]y the retention of *three* or more construction code officials or third-party agencies to act on behalf of the municipality for administration and enforcement of this act." House Bill 1763 of 2007 PN 2359 (referred to committee on local government, July 17, 2007)(emphasis added).

dangerous construction. It contends that prior to the passage of the PCCA, the building inspectors employed by the municipality were public employees subject to the State Ethics Act, which prevented building inspectors from inspecting work performed by the inspector individually or the inspector's family or where the inspector and builder have a similar relationship. *See* 65 Pa.C.S. §§ 1102, 1103. The same ethical requirements, however, do not bind independent construction code officials, and under the Commonwealth Court's interpretation, a third-party agency would be forced to accept potentially biased inspections. Conversely, under the Townships and Third–Party Agencies' interpretation, the third-party agency would have supervisory control over its own inspectors, thus reducing the likelihood of biased inspections and thereby insuring the public's safety.

The Townships and Third–Party Agencies also note that 35 P.S. § 7210.503 allows municipalities to adopt more stringent standards, so long as they meet or exceed the standards set by the PCCA. Therefore, to enforce the higher standards that a municipality may require, it makes sense that the municipality would not accept any state certified construction code official, but instead would only accept inspections performed by its chosen inspectors who have been trained in the municipality's code. It cannot be, they argue, that a state licensed inspector with no knowledge of the enhanced local construction code should be allowed to inspect for code compliance and that the municipality be forced to accept it. Accordingly, the Townships and Third–Party Agencies assert that the Commonwealth Court erred in concluding that the Registration Subsection prevented a third-party agency from performing all code compliance inspections for a municipality.

Conversely, Appellee Plaintiffs adopt the argument set forth in the Commonwealth Court's opinion. Plaintiffs contend that nothing in the PCCA allows the third-party agency to be the exclusive inspector for purposes of code compliance, even though the Third–Party Agency Administration Subsection provides authority for a third-party agency to be the sole administrative and enforcement entity. Instead, Plaintiffs

.

assert that the terms administration and enforcement implies the supervision of inspectors, but not the conducting of inspections themselves.

As the second prong of their analysis, the Plaintiffs focus on the Registration Subsection:

**Registration.**—Nothing in this act shall allow a municipality to prohibit a construction code official who meets the requirements of Chapter 7 and remains in good standing from performing inspections in the municipality. This section does not alter the power and duties given to municipalities under subsection (b)(1), (3) and (4).

35 P.S. § 7210.501(d). Again, echoing the Commonwealth Court, Plaintiffs assert that the Registration Subsection requires a municipality to allow all state certified construction code officials to perform inspections, which it interprets to mean inspections for code compliance purposes. They propose that the Registration Subsection's use of the term "inspections" necessarily references PCCA compliance inspections given that construction code officials are certified by the state under the PCCA for no purpose other than PCCA compliance. *See* 35 P.S. § 7210.701.

Next, observing the cannon of construction that the mention of one thing implies the exclusion of all others (*expression unius est exclusio alteruis*), Plaintiffs recognize that the Registration Subsection expressly exempts from its application a municipality's power under three of the methods of municipal administration in 35 P.S. § 7210.501(b), *supra* at 3–4, n. 1, specifically subsection (1) relating to administration and enforcement through an employee of the municipality, subsection (3), relating to joint administration between multiple municipalities, and subsection (4) relating to a contract with another municipality to utilize the other municipality's enforcement authority. By default, the Registration Subsection therefore applies to subsection (2), the Third–Party Agency Administration Subsection, and subsection (5), the use of the Department of Labor for plan review, inspection, and enforcement. Accordingly, Plaintiffs argue that while the three exempted methods of municipal administration could

allow for the exclusion of construction code officials from performing compliance inspections, the Registration Subsection prohibits municipalities who have contracted with a third-party agency from preventing construction code officials from performing code compliance inspections.[10]

Plaintiffs reject as illusory the Townships and Third–Party Agencies' argument that the Registration Subsection merely forbids the townships from prohibiting construction code officials from performing other types of inspections, unrelated to code compliance. Plaintiffs observe that the powers of municipalities are limited to those expressly granted by statute. *See Schrier v. Kisselback*, 879 A.2d 834 (Pa.Cmwlth.2005). Thus, they assert that municipalities have no power to regulate private business absent statutory authorization. They argue that a municipality's authority to prohibit all inspections (rather than merely inspections for code compliance) would result in the regulation of the inspection industry. As regulation of business is already prohibited under municipal law generally, the Plaintiffs assert that interpreting the Registration Subsection to mean the same thing would be mere surplusage, and thus the interpretation is contrary to the rules of statutory construction requiring courts to give effect to all the provisions of a statute.

Addressing the Townships and Third–Party Agencies' argument that the third-party agency's lack of authority over the

10. Although this argument has some appeal, it is not implicated in our plain language analysis. Regardless of the legislative reasons for exempting certain forms of administration from the Registration Subsection, and thus arguably allowing those exempted municipalities to establish criteria that might prohibit a construction code official from performing any inspections, we conclude that the plain language of the section does not restrict municipalities in regard to inspections for compliance purposes. Instead, unlike the language in the proposed amendment, discussed *supra* at 14, the current language only forbids municipalities from prohibiting construction code officials from performing inspections generally, and does not speak to whether the third party agency must accept the inspections in administering and enforcing the PCCA. As the language is plain, we cannot resort to statutory construction in an attempt to divine the legislative intent. *See* 1 Pa.C.S. § 1921 ("When the words of a statute are clear and free of ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit.").

independent inspectors could lead to chaos and bias, Appellees argue that a municipality could require inspectors to register with the municipality and could even require testing.[11] Moreover, they observe that there are methods by which the third-party agency or the townships could supervise the independent inspectors, including by seeking to have the official decertified by the state for performing unsatisfactory inspections, by preparing a checklist to be completed by any inspector, or by requiring proof of insurance prior to the performance of inspections. In contrast, Plaintiffs contend that their reading of the PCCA serves the purpose of the Act because it ensures an ample supply of construction code officials available to perform inspections, rather than limiting the pool of inspectors to those employed by the chosen third-party agency. This, in turn, they propose, would reduce the costs of inspections and construction through competition.

As is evident from the arguments of the parties, the issue in this case is a pure question of statutory interpretation governed by our rules of statutory construction. "When the words of a statute are clear and free from all ambiguity, the letter of the statute is not to be disregarded under the pretext of pursuing its spirit." *Middletown Township v. Lands of Stone*, 595 Pa. 607, 939 A.2d 331, 337 (2007)(citing 1 Pa.C.S. § 1921). Moreover, we acknowledge that our standard of review of this pure question of law is *de novo* and our scope of review is plenary. *Id.* at 335 n. 4.

After careful consideration of the arguments of both sides and their *amici curiae*, we conclude that the plain language of the Third–Party Agency Administration Subsection provides authority for a municipality to employ a single third-party agency to be the exclusive administration and enforcement authority for the PCCA: "This act may be administered and enforced by municipalities ... [b]y the retention of one or more construction code officials or third-party agencies to act on behalf of the municipality for administration

11. The Plaintiffs, however, provide no authority for their assertion that the non-exempted municipalities can impose registration requirements, which on its face seems contrary to the Registration Subsection.

and enforcement of this act." 35 P.S. § 7210.501(b)(2). Moreover, we conclude that the performance of PCCA compliance inspections is encompassed by the term enforcement, and thus provides the third-party agency the exclusive authority to perform PCCA compliance inspections as an integral aspect of their enforcement authority. As noted by the Erie and Fayette County trial courts, the PCCA cannot be enforced without the performance of inspections. Common sense dictates that an entity charged with the enforcement of the specific requirements of a construction code cannot fulfill those duties without physically observing whether the requirements have been met. Although the generic definitions of the terms enforcement, administration, and inspection could be read as distinct one from the other, in the application of the PCCA, they are so intertwined that enforcement simply must encompass inspection. Accordingly, the grant of sole authority in the Third-party Agency Administration Subsection to administer and enforce the PCCA for a municipality gives the third-party agency the authority to decide whether to perform all inspections itself or to accept the inspections performed by unaffiliated construction code officials.

■ Moreover, the Registration Subsection as written does not require the third-party agencies to accept any construction code official's inspection for code compliance purposes, despite the fact that it could have so provided. Instead, the subsection entitled Registration, as currently enacted, is read most properly as preventing the non-exempted municipalities from intruding on the Commonwealth's registration authority by imposing other conditions on construction code officials to prevent them from performing inspections generally: "Nothing in this act shall allow a municipality to prohibit a construction code official who meets the requirements of Chapter 7 and remains in good standing from performing inspections in the municipality." 35 P.S. § 7210.501(d). If the legislature had intended to require third-party agencies administering and enforcing the PCCA to accept construction code officials' inspections for code compliance purposes, it could have provided language indicating that intent. Indeed, as the proposed

amendments demonstrate, the General Assembly is considering the value of such a requirement. Until the General Assembly alters the language of the statute to require the third-party agency to accept all inspections for code compliance purposes, however, we will not alter the language of the statute, which as enacted merely prevents a municipality from prohibiting code officials from performing inspections for purposes other than code compliance.

Our conclusion based on the plain language of the Third–Party Agency Administration Subsection and the Registration Subsection is buttressed by policy considerations. The purpose of the PCCA was to improve the safety of construction throughout Pennsylvania by providing a uniform construction code. Safety would be undermined by a system that allows builders to handpick inspectors and then requires the entity charged with enforcement to accept the inspections without question. Indeed, we credit the argument of the Townships and the Third–Party Agencies that it is contrary to reason to impose liability and contractual obligations on the third-party agency to enforce and administer the PCCA without also allowing the third-party agency the choice to control those performing the inspections for code compliance, which are the primary tool of enforcement.

Accordingly, we reverse the decision of the Commonwealth Court, and hold that 35 P.S. § 7210.501 of the PCCA does not require third-party agencies under contract with a municipality for enforcement and administration of the PCCA to accept for PCCA compliance purposes inspections performed by any construction code official.

Chief Justice CASTILLE, Justice EAKIN, Justice TODD and Justice McCAFFERY join the opinion.

Justice SAYLOR files a dissenting opinion.

Justice SAYLOR, dissenting.

I respectfully differ with the majority's position that Section 501 of the PCCA is subject to a straightforward, plain-mean-

ing interpretation favorable to Appellants' position. Instead, I find inherent tension between the enactment's authorization of administration and enforcement by a municipality's retention of one or more non-employee construction code officials or third-party administrators, *see* 35 P.S. § 7210.501(b)(2), and the provision of the statute which facially appears to be designed to account for the broader professional interests of all construction code officials certified by the Department of Labor and Industry, *see* 35 P.S. § 7210.501(d) ("Nothing in this act shall allow a municipality to prohibit a construction code official who meets the requirements of Chapter 7 and remains in good standing from performing inspections in the municipality.").[1] In my view, this conflict is most readily resolved by reference to the General Assembly's explicit direction that, subject to exceptions not applicable here, Section 501(d) applies notwithstanding other provisions of the Act. *See id.*[2]

1. In this regard, I agree with the majority's conclusion that the terms "administration and enforcement" and "inspection," as employed in the PCCA, overlap. I differ, however, with the majority's interpretation that "inspections" as used in Section 501(d) means only inspections other than those performed for purposes of PCCA administration and enforcement. *See* Majority Opinion, at 264–66, 964 A.2d at 890–91. Significantly, in every other instance of the use of the term within the PCCA, the terms "inspect" and "inspection" implicates the opposite, namely, inspections performed for administration and enforcement purposes. *See, e.g.,* 35 P.S. §§ 7210.103 (definitions of "construction code official," "municipal code official," and "third-party agency"), 7210.501(e) (discussing conduct of "the plan review and inspections" in the context of non-municipal administration). Indeed, one of the express purposes of the PCCA is "[t]o eliminate unnecessary duplication of effort and fees related to the review of construction plans and the inspection of construction projects." 35 P.S. § 7210.102(5). An interpretation contemplating unnecessary, advisory, or superfluous inspections runs contrary to this objective. Moreover, under the majority's reading, which assigns a very limited role to Section 501(d), there would appear to be little reason for exceptions specified there, pertaining to employment of a municipal code official, joint enforcement with another municipality, or usage of the administration and enforcement mechanism of another municipality. *See* 35 P.S. § 7210.501(d) ("This section does not alter the power and duties given to municipalities under subsections (b)(1), (3) and (4).").

2. While, as Appellants observe, the Legislature has considered amendments which would clearly state its present intentions in this regard, *see* Majority Opinion, at 258–60, 964 A.2d at 886–87, such proposals do not

In terms of the policy arguments, in light of the certification process and other checks referred to in the majority's discussion of Appellee's arguments, *see* Majority Opinion, at 263–66, 964 A.2d at 889–90, I believe the social policy aspect is best left to the political branch. In this regard, I differ with the majority's supposition that municipalities and third-party administrators were left without recourse under the Commonwealth Court's holding, *see* Majority Opinion, at 264–66, 964 A.2d at 890–91, as well as its conclusion that it would be unreasonable for the Legislature to factor broader interests of construction code officials into the overall compliance scheme. *See id.*

For the above reasons, I would affirm the order of the Commonwealth Court based on somewhat different reasoning.

shed a great deal of light on the existing legislation. Notably, amendments may be advanced in furtherance of change, but they may also serve to clarify existing intent in light of controversies such as the present litigation. Moreover, the legislative process is highly fluid and dynamic, and thus, the specific intentions of current legislators measured at the present point in time cannot always be reconciled with those of their predecessors, or even the intentions of the same members now faced with different or evolving sets of considerations. *Cf. HSP Gaming, L.P. v. City of Philadelphia*, 598 Pa. 118, 161, 954 A.2d 1156, 1181 (2008) (explaining that "the statement of a later legislative body, concerning the intended meaning and scope of an enactment passed by legislative predecessors, is entitled to no particular deference").