**MIDDLETOWN TOWNSHIP, Appellant**

v.

**COUNTY OF DELAWARE UNIFORM CONSTRUCTION CODE BOARD OF APPEAL.**

Commonwealth Court of Pennsylvania.

Argued Feb. 15, 2012.
Decided April 20, 2012.

Charles G. Miller, Media, for appellant.

Michael P. Dignazio, Media, for appellee Sara Caldwell.

BEFORE: PELLEGRINI, President Judge, and LEADBETTER, Judge, and COHN JUBELIRER, Judge, and SIMPSON, Judge, and BROBSON, Judge, and McCULLOUGH, Judge, and COVEY, Judge.

OPINION BY President Judge PELLEGRINI.

Middletown Township (Township) appeals from an order of the Court of Common Pleas of Delaware County (trial court) granting Sara Caldwell's (Caldwell's) petition to quash the Township's appeal because the Township did not properly designate the Delaware County Uniform Construction Code Board of Appeals (Board) to hear appeals from determinations that the Township's officials made in administering and enforcing Section 501(b)(3)-(4) of the Uniform Construction Code Act (Act).[1] Finding no error, we affirm.

The controlling issue in this appeal is whether the Township properly designated the Board to hear appeals from the decision of its officials denying applications for permits under the Act. By passing Ordinance 653 on May 24, 2004, the Township amended Chapter 89 of its Code of Ordinances, entitled "Construction Codes," adopting "[t]he Uniform Construction Code contained in 34 Pa.Code, Chapters 401–405, as amended from time to time, including certain appendixes to the Uniform Construction Code and regulations to Act 45 of 1999 promulgated by the Pennsylvania Department of Labor and Industry is hereby adopted and incorporated herein by reference as the Building Code of the Township of Middletown." (Township of Middletown Code of Ordinances, § 89–1.) Of the various options available for administration and enforcement of the Act, the Township elected to administer and enforce the provisions of the Act itself. *Id.*, § 89–2. One of the requirements of the Uniform Construction Code (Code) is establishment of a board—consisting of architects, engineers, contractors or persons otherwise knowledgeable in building construction—to hear appeals from decisions of the local code enforcement officer. To assist municipalities with administration of the Code, Delaware County created the Board, a county-wide board of appeals. On November 8, 2004, the Township enacted Resolution 2004–97, which established

---

1. Act of November 10, 1999, P.L. 491, *as amended*, 35 P.S. §§ 7210.101–7210.1103. Section 501 of the Act provides, in relevant part, that the Act may be enforced as follows:

   (3) Two or more municipalities may provide for the joint administration and enforcement of this act through an intermunicipal agreement under 53 Pa.C.S. Ch. 23 Subch. A (relating to intergovernmental cooperation).

   (4) By entering into a contract with the proper authorities of another municipality for the administration and enforcement of this act. When such a contract has been entered into, the municipal code official shall have all the powers and authority conferred by law in the municipality which has contracted to secure such services.

   35 P.S. § 7210.501(b)(3)-(4). Under the Act, municipalities that adopt an ordinance to enforce the Act or are parties to an agreement for joint enforcement of the Act are required to "establish a board of appeals as provided by Chapter 1 of the 1999 BOCA National Building Code, Fourteenth Edition, to hear appeals from decisions of the code administrator. Members of the municipality's governing body may not serve as members of the board of appeals." 35 P.S. § 7210.501(c)(1).

the Board as the Township's board for appeals from Township code officials' determinations under the Act. Township Resolution 2004–97 authorized the execution of an intermunicipal agreement with the County to give the Board authority to act on an appeal from a determination of the Township's code officials.

The factual context in which this issue was raised began when Caldwell purchased property in the Township, which was zoned as an SU–1 Special Use district. The property had been built as a single-family home, and in 2001, an occupancy permit was issued for interior renovations for a pest control business. (Reproduced Record [R.R.] at 19a.) Caldwell planned to use it for her retail business, Blue Santa Beads, which she operated primarily through internet and phone sales, and for workshops on the property. On May 20, 2004, she applied with the Township Zoning Hearing Board (ZHB) for a variance to operate a business on the property, including retail sales, because retail sales were not a permitted use in an SU–1 district. The ZHB denied the application and no appeal was taken. On July 28, 2004, Caldwell filed a conditional use application which proposed to use the property as an office, sales space and instructional workshop. The Township Planning Commission (Commission) approved the application on August 10, 2004, but the Township Council denied the formal application on September 13, 2004. Caldwell and the Township then entered into a stipulation agreement on January 14, 2005, which provided that Caldwell could use the property as proposed, but she could not hold more than two classes per day, no more than 10 attendees would be present for each class, no evening classes would occur on Saturday or Sunday, and no retail sales would occur on the premises except for supplies to be used for classes. She was also re-quired to add additional parking spaces, including one handicapped-accessible space, storm water management improvements, and additional landscaping. Caldwell also agreed to submit a site plan to the Township that demonstrated land development improvements to the property to accommodate the business and instructional use of the property. Caldwell did not comply with the agreement.

Caldwell also applied for and received building permits to make renovations to the property for her business, including converting the attached garage into a space for storage and a classroom area and adding steps with a landing and handrail. The Township Code Enforcement Officer inspected the renovations and determined that the stairs failed to comply with the International Building Code (IBC), the bathroom failed to include handicap-grab bars, and no handicapped accessible parking space was provided. Caldwell continued to use the property for her business for several years until the Township cited her for improper use. The citations were withdrawn when Caldwell vacated the property in September 2008.

Caldwell then submitted a request for a new certificate of occupancy for the property, which the Township denied. She requested that the Township reissue the certificate of occupancy that existed prior to her purchase of the property. The Township denied the permits because "all permits issued have been revoked or closed and no certificate of occupancy has been issued for this property. The [Codes] all require a permit for the change of occupancy and a new Certificate of Occupancy." (R.R. at 20a.) Caldwell appealed to the Board, which sustained her appeal, finding that because "the occupancy of the building has not changed, the [Code] does not required a new certificate of occupancy." [2] (R.R. at 68a.)

**2.** No one has raised the issue of whether the change in occupancy was for zoning purposes

The Township appealed the Board's decision to the trial court. Caldwell then moved to quash the appeal, arguing that the Board did not have jurisdiction to hear Township appeals because the Township improperly delegated its appellate review function to the Board. She contended that the designation was improper because Section 501 of the Act did not provide for a municipality to "contract away [its] Board of Appeal rights," (R.R. at 214a), and even if it could designate the Board through an Intergovernmental Cooperation Act (ICA) agreement, that designation was ineffective because it was done by resolution, not by ordinance as the ICA required.[3]

■■■ Agreeing with Caldwell, the trial court determined that Section 501 of the Act only allowed the Township to designate a Board to hear appeals as part of an agreement for the joint administration and enforcement of the Act. Because the Township decided to enforce the Code, the trial court held that under Section 501(c)(1) of the Act, the Township was required to establish its own appeals board, not designate the Board to hear its appeals. The trial court also agreed with Caldwell that the Township improperly authorized the agreement to hear appeals because the ICA required that it be done by ordinance, not by resolution, as was done here. *See* 53 Pa.C.S. §§ 2305, 2315. Because it was not properly designated, the trial court found that the Board was without jurisdiction to hear appeals and granted Caldwell's petition to quash the

Township's appeal.[4] The Township then filed this appeal.[5]

■■■ On appeal, the Township contends that the trial court erred in determining that it could not designate the Board under Section 501 of the Act, even though the Board was not created as part of a joint administration and enforcement of the Act. Regarding creation of boards of appeals, Section 501(c)(1) of the Act, 35 P.S. § 7210.501(c)(1), provides:

A municipality which has adopted an ordinance for the administration and enforcement of this act or municipalities which are parties to an agreement for the joint administration and enforcement of this act shall establish a board of appeals as provided by Chapter 1 of the 1999 BOCA National Building Code, Fourteenth Edition, to hear appeals from decisions of the code administrator. Members of the municipality's governing body may not serve as members of the board of appeals.

We agree with the trial court that this provision only authorizes municipalities to join with a board of appeals that it did not create when it enters into an agreement for the joint administration and enforcement of the Act. Moreover, the Act defines a board of appeals as a "body created by a municipality or more than one municipality to hear appeals from decisions of the code administrator." Section 103 of the Act, 35 P.S. § 7210.103. Because it was enforcing the provisions of the Act, the Township

---

or that the ZHB has jurisdiction over this matter.

3. *See* Intergovernmental Cooperation Act, 53 Pa.C.S. §§ 2305, 2315.

4. The trial court erred in quashing the appeal from the Board because the appeal to the trial court was proper. Rather, the trial court, after concluding that the Board lacked jurisdiction, should have vacated the Board's order.

5. Our standard of review of a question of law is *de novo*, and review is plenary. *Allegheny Inspection Service, Inc. v. North Union Township*, 600 Pa. 245, 964 A.2d 878 (2009). Where a trial court takes additional evidence or makes its own findings based on the record, we must examine the trial court's decision, not the Board's, for evidentiary support. *Koutrakos v. Zoning Hearing Board*, 685 A.2d 639 (Pa.Cmwlth.1996).

was required to establish its own board of appeals under Section 501(c)(1). The Township did not create the Board, but entered into an agreement with the county to delegate that authority to the Board. Section 501 of the Act does not provide authorization for the Township to designate the Board to hear appeals for action it took regarding enforcement of the Code.

■ The Township also contends that under Section 2304 of the Intergovernmental Cooperation Act (ICA),[6] it can designate the Board to hear appeals. Section 2304 provides that a municipality may "cooperate or agree in the exercise of any function . . . or delegate or transfer any function, power or responsibility to, one or more other local governments, the Federal Government or any other state or its government." 53 Pa.C.S. § 2304. To authorize an intergovernmental cooperation agreement, the ICA provides that "[a] local government may enter into intergovernmental cooperation with or delegate any functions, powers or responsibilities to another governmental unit or local government *upon the passage of an ordinance* by its governing body." 53 Pa.C.S. § 2305 (emphasis added).

Notwithstanding that it designated the Board by Resolution 2004–97, the Township contends that § 89–4(C) of its Code of Ordinances also authorized its designation of the Board to hear appeals, because it authorized an "agreement with one or more other municipalities for the joint administration and enforcement of this Act through an intermunicipal agreement."[7] (Township of Middletown Code of Ordinances, § 89–4(C).) While that may be so,

§ 89–4(C) only provides that the Township can enter into an intergovernmental agreement for the entire "administration and enforcement of the Act," and is not *à la carte* authorization to designate a board to only hear appeals. Also, the Township's position is totally undercut by § 89–5 of its Code of Ordinances, which specifically sets forth how a Board of Appeals is to be designated. It provides:

> A Board of Appeals shall be established by resolution of the governing body of this municipality in conformity with the requirements of the relevant provisions of the code, as amended from time to time, and for the purposes set forth therein. If at any time enforcement and administration is undertaken jointly with one or more other municipalities, said Board of Appeals shall be established by joint action of the participating municipalities.

(Township of Middletown Code of Ordinances, § 89–5.) This provision only authorizes a resolution to be used to establish its own board of appeals and requires the Township to take future legislative action to designate a board of appeals when and if there is joint enforcement and administration of the Act.

■ Outside of the Code and the Act, the ICA provides that that delegation of a municipality's power to another municipality must be done by ordinance. Passing an ordinance is accompanied by particular formalities, including notice to residents to provide them the opportunity to voice their concerns with the municipality's proposed actions. Because it is neither an ordinance nor was it passed with the formalities of an ordinance,[8] Resolution 2004–97 is ineffec-

---

6. 53 Pa.C.S. §§ 2301–2317.

7. § 89–4(C) of its Construction Code is merely repetitive of 35 P.S. § 7210.501(b)(3) that sets forth the various ways the Township can choose to enforce the Code.

8. As a general rule, a resolution does not have the effect of a law or an ordinance. It is usually viewed merely as "a formal expression of the opinion or will of an official body or a public assembly, adopted by vote." *McGinley v. Scott*, 401 Pa. 310, 321, 164 A.2d 424 (1960); Sutherland Statutory Construction, § 29.01. However, the name given to a

tive to designate the Board to hear appeals from actions regarding the Act.

Because the Board was without jurisdiction to hear appeals from determinations made under the Act, we modify the trial court's order to vacate the order of the Board, as the trial court properly concluded that the Board was without jurisdiction to render its decision. The net effect of determining that the Board lacked jurisdiction to hear Caldwell's appeal is that the Township's denial of Caldwell's occupancy permit remains in place, and there is not a properly constituted board of appeals to hear her appeal. While we are perplexed by this outcome because no one "wins," we will leave the matter to be sorted out below, which, hopefully, will not be the subject of another appeal.

Accordingly, the order of the trial court is affirmed as modified.

### ORDER

AND NOW, this 20th day of April, 2012, the order of the Court of Common Pleas of Delaware County, dated May 13, 2011, is affirmed as modified.

DISSENTING OPINION BY Judge SIMPSON.

I must dissent. For the following reasons, I would reverse the decision of my respected colleague on the Court of Common Pleas of Delaware County (common pleas) and remand for a decision on the merits of the appeal.

The thoughtful majority opinion accurately sets forth the procedural history of this controversy. Briefly, it involves an appeal to common pleas by Middletown Township (Township) from the Delaware County Uniform Construction Code Board of Appeals (County Board). Common pleas determined the County Board was not properly authorized by the Township to entertain its Uniform Construction Code Act (UCC Act)[1] appeals, and it quashed the appeal before reaching the merits.

Thus, the issue currently before us is whether the Township properly designated the County Board to hear UCC Act appeals originating in the Township. In this regard, common pleas made two points. First, the Township needed to create its own appeals board because it elected to administer the UCC Act itself. Second, the Township's delegation of its appeal board function to the County Board was improper because it was done by resolution rather than by ordinance, as required by the Intergovernmental Cooperation Act, 53 Pa.C.S. § 2305.

Common pleas did not discuss the language of the ordinance by which the Township complied with its responsibilities under the UCC Act. Ordinance No. 263 (Ordinance) was adopted by the Township on May 24, 2004. Reproduced Record (R.R.) 262a–67a. As required by the UCC Act, the Ordinance adopted the appropriate construction codes. Significantly, in Section V, the Ordinance provided for various forms of administration and enforcement "as determined by the [Township] from time to time by *resolution* . . . ." R.R. at 265a (emphasis added). Further, in Section VI, the Ordinance provided: "A Board of Appeals shall be established by

---

particular enactment is not important to determine whether it has the legal effect of an ordinance but rather whether the requirements which are essential to the validity of an ordinance were observed in the passage, approval, recording and publication of resolutions where the action of councils is legisla-

tive. *Gallagher v. Borough of Olyphant,* 181 Pa. 191, 198, 37 A. 258 (1897). The Township admits that it did not pass the resolution with the statutory formalities of an ordinance.

1. Act of November 10, 1999, P.L. 491, *as amended,* 35 P.S. § 7210.101–7210.1103.

*resolution* ...." R.R. at 266a (emphasis added).

Consistent with the Ordinance, the Township thereafter enacted Resolution 2004–97 approving the use of the County Board as the body performing the appeal functions, and approving the execution of any agreement as may be required to authorize the County Board to act. R.R. at 278a. Shortly thereafter, a standardized written agreement between the Township and the County was executed. The written agreement provides that the "Municipality selects" the County Board as its appeals board, and the County "approves the Municipality's selection." R.R. 280a–81a.

Because the Ordinance specifically authorized further actions related to the UCC Act to be undertaken by resolution, I discern no fatal error in the form by which the Township acted.[2]

Importantly, these actions are consistent with my reading of the relevant provisions of the UCC Act. In this regard, it is useful to examine the structure of Section 501 of the UCC Act, 35 P.S. § 7210.501, entitled "Administration and enforcement." Subsection (b) addresses "Municipal administration and enforcement." A separate provision, subsection (c), addresses "Board of appeals." The separate statutory treatment of these activities makes sense because they function differently. Municipal administration and enforcement is an ongoing, almost daily function. Appeals from administrative decisions, however, would be sporadic, and a board of appeals would not be needed on an ongoing, daily basis.

In short, because there are separate statutory provisions for each, and because they function differently, I do not equate administration/enforcement with appeals. They need not be undertaken in a parallel manner. Thus, I respectfully disagree with common pleas that because the Township elected to perform its own administration/enforcement, it was therefore required to create its own appeals board.

For further support, I look to the "Board of appeals" language of Section 501(c)(1) of the UCC Act, 35 P.S. § 7210.501(c)(1), which states in pertinent part (with emphasis added):

> *A municipality which has adopted an ordinance for the administration and enforcement of this act* or municipalities which are parties to an agreement for the joint administration and enforcement of this act *shall establish a board of appeals* as provided by Chapter 1 of the 1999 BOCA National Building Code, Fourteenth Edition, to hear appeals from decisions of the code administrator. Members of the municipality's governing body may not serve as members of the board of appeals.

Clearly, this provision does not require a municipality which has adopted an ordinance for the administration and enforcement of the UCC Act, like Township, to create its own new appeals board; rather, the plain language simply requires that there must be a board to hear appeals. The locus of the board, the form of its selection, and the timing of its creation are matters not constrained by the "Board of appeals" provisions of the UCC Act.

Nor does the Intergovernmental Cooperation Act, 53 Pa.C.S. § 2305, compel a different result. That Section provides in pertinent part: "A local government may enter into intergovernmental cooperation with or delegate any functions, powers or responsibilities to another governmental

---

**2.** Moreover, the ordinance establishing the County Board recites that it was established by resolutions of the various government units in the County. Reproduced Record at 269a.

unit or local government upon passage of an ordinance." However, the appeals board function is not a function of the Township or of the County; instead, it is a function of an independent body. Indeed, members of a municipality's governing body "may not serve as members of the board of appeals." Section 501(c)(1) of the UCC Act, 35 P.S. § 7210.501(c)(1). Therefore, the Township is not delegating its own function, and the general Intergovernmental Cooperation Act does not conflict with the plain "Board of appeals" provisions of the more specific, recently-enacted UCC Act.[3]

Sometimes we make things more complicated than they need to be. Here, the Township enacted the Ordinance, which provided for administration/enforcement of the UCC Act and provided for an appeals board. The Ordinance authorized selection of an appeals board by resolution. The relevant provisions of the UCC Act do not require something different. Therefore, I find no fault in the Township's actions, and I conclude that it properly selected the County Board to perform the UCC Act appeals board function. I would reverse common pleas' contrary conclusions and remand for a decision on the merits.

Judge LEADBETTER and Judge COHN JUBELIRER join in this dissent.

---

3. As discussed above, a distinction must be drawn between administration/enforcement and appeals under the UCC Act. By express provision, a municipality needs to comply with the Intergovernmental Cooperation Act for joint administration and enforcement. Section 501(b)(3) of the UCC Act, 35 P.S. § 7210.501(b)(3). But there is no corresponding express requirement for compliance with the Intergovernmental Cooperation Act in the separate "Board of appeals" provisions.