**ALLEGHENY INSPECTION SERVICE, INC. and Steel City Inspection Agency, Inc., Appellants**

v.

**NORTH UNION TOWNSHIP and K2 Engineering, Inc.**

Commonwealth Court of Pennsylvania.

Argued Oct. 18, 2006.

Decided Dec. 6, 2006.

---

David F. Toal, Pittsburgh, for appellants.

Stephen J. Poljak, Pittsburgh, for appellee, North Union Township.

BEFORE: COLINS, President Judge, McGINLEY, Judge, SMITH–RIBNER, Judge, PELLEGRINI, Judge, FRIEDMAN, Judge, COHN JUBELIRER, Judge, and LEAVITT, Judge.

OPINION BY Judge FRIEDMAN.

Allegheny Inspection Service, Inc. (AIS) and Steel City Inspection Agency, Inc. (SCI) (together, Appellants) appeal from the April 5, 2006, order of the Court of Common Pleas of Fayette County (trial court) entering judgment in favor of North Union Township (Township) and K2 Engineering, Inc. (K2) (together, Appellees). We reverse.

Concerned that many municipalities in the Commonwealth either had no construction codes or had a confusing multiplicity of construction codes, the General Assembly, in 1999, enacted the Pennsylvania Construction Code Act (PCCA),[1] to insure uniform, modern construction standards and regulations throughout the Commonwealth through the adoption of a Uniform Construction Code (UCC).[2] Section 102(a) of the PCCA, 35 P.S. § 7210.102(a).[3] The

---

1. Act of November 10, 1999, P.L. 491, *as amended*, 35 P.S. §§ 7210.101–7210.1103.

2. Pursuant to section 301 of the PCCA, 35 P.S. § 7210.301, the Department of Labor and Industry (Department) promulgated the regulations that constitute the UCC at Chapters 401, 403 and 405 of Title 34 of the Pennsylvania Code. In establishing the UCC, the Department adopted and incorporated by reference various model codes. *See* 34 Pa.

Code § 403.21. Under the UCC, construction standards of any then existing statute, local ordinance or regulation promulgated or adopted by a board, department, commission, state agency or local government were preempted. *See* 35 P.S. §§ 7210.104(d)(1), 7210.301(d)(1).

3. The intent and purpose of the PCCA is to, *inter alia:* (1) provide standards for the protection of life, health, property and environ-

PCCA applies generally to the construction, alteration, repair and occupancy of all buildings in the Commonwealth and governs inspections in various areas, including building, electrical, mechanical, plumbing, energy, fire, accessibility and elevator inspections. Section 104 of the PCCA, 35 P.S. § 7210.104(a); 34 Pa.Code § 401.7. The Township, a second class township in Fayette County, Pennsylvania, elected to administer and enforce the provisions of the PCCA by enacting an ordinance adopting the UCC as its municipal building code.[4] *See* section 501(a) of the PCCA, 35 P.S. § 7210.501(a); 34 Pa.Code § 403.102.

On July 14, 2004, the Township entered into a contract with K2 to administer and enforce the PCCA/UCC on behalf of the Township. (R.R. at 23–24.) The contract was authorized by subsection 501(b)(2) of the PCCA, which provides, "[t]his act may be *administered and enforced* by municipalities ... [b]y the retention of *one* or more construction code officials or third-party agencies to act on behalf of the municipality *for administration and enforcement* of this act."[5] 35 P.S. § 7210.501(b)(2) (emphasis added). In section 103 of the PCCA, "[c]onstruction code official" is defined as "[a]n individual

---

ment and for the safety and welfare of the consumer, general public, and the owners and occupants of buildings and structures; (2) encourage standardization and economy in construction; (3) encourage the use of state-of-the-art technology, devices and improvements; (4) eliminate existing codes to the extent that such codes were restrictive, obsolete, conflicting and contained duplicative construction regulations; and (5) eliminate unnecessary duplication of effort and fees relating to the review of construction plans and the inspection of construction projects. Section 102(b) of the PCCA, 35 P.S. § 7210.102(b); *DRB, Inc. v. Pennsylvania Department of Labor and Industry*, 853 A.2d 8 (Pa.Cmwlth.2004), *aff'd*, 585 Pa. 8, 887 A.2d 1216 (2005).

**4.** The General Assembly required that within 90 days of the PCCA's effective date, municipalities elect whether to administer and enforce its provisions. Municipalities electing to opt in by enacting ordinances adopting the UCC as their municipal building code were presented with five different options for municipal administration and enforcement of the PCCA. In municipalities electing to opt out by failing to adopt such an ordinance, applicants seeking permits for residential construction assumed responsibility for obtaining the services of a certified construction code official or third-party agency to perform the requisite plan review and inspections, and applicants seeking permits for commercial construction had to obtain the services of the Department or certified third-party agency to conduct the plan review and inspections required by the PCCA. Sections 501(a), (b) and (e) of the

PCCA, 35 P.S. §§ 7210.501(a), (b) and (e); 34 Pa.Code §§ 403.102 and 403.103.

**5.** Section 501(b) of the PCCA provides four additional methods by which municipalities may administer and enforce that act, stating in full as follows.

**(b) Municipal administration and enforcement.**—This act may be administered and enforced by municipalities in any of the following ways:

(1) By the designation of an employee to serve as the municipal code official to act on behalf of the municipality for administration and enforcement of this act.

(2) By the retention of one or more construction code officials or third-party agencies to act on behalf of the municipality for administration and enforcement of this act.

(3) Two or more municipalities may provide for the joint administration and enforcement of this act through an intermunicipal agreement under 53 Pa.C.S. Ch. 23 Subch. A (relating to intergovernmental cooperation).

(4) By entering into a contract with the proper authorities of another municipality for the administration and enforcement of this act. When such a contract has been entered into, the municipal code official shall have all the powers and authority conferred by law in the municipality which has contracted to secure such services.

(5) By entering into an agreement with the department for plan reviews, inspections and enforcement of structures other than one-family or two-family dwelling units and utility and miscellaneous use structures.

35 P.S. § 7210.501(b).

certified by the Department of Labor and Industry [Department] in an appropriate category established pursuant to section 701(b) of this act to perform plan review of construction documents, inspect construction *or* administer and enforce codes and regulations in such code category under this act or related acts," and "[t]hird-party agency" is defined as "[a] person, firm or corporation certified by the Department ... as a construction code official and contracted to perform plan review of construction documents, inspect construction *or* administer and enforce codes and regulations under this act." [6] 35 P.S. § 7210.103 (footnote omitted, emphasis added).

Appellants and K2 are Pennsylvania corporations engaged in the business of performing electrical inspections, and they all employ certified electrical . inspectors. Upon learning that the Township would only recognize inspections performed by K2 for purposes of determining compliance with the UCC, Appellants filed a declaratory judgment action seeking to have the trial court interpret the PCCA and declare that the Township's refusal to recognize inspections by any qualified inspector other than K2 violated the express language of section 501(d) of the PCCA. (R.R. at 27–36.) That section provides:

> (d) **Registration.**—*Nothing in this act shall allow a municipality to prohibit a construction code official who meets the requirements of Chapter 7 and remains in good standing from performing inspections in the municipality.* This

section does not alter the power and duties given to municipalities under subsection (b)(1), (3) and (4).

35 P.S. § 7210.501(d) (emphasis added). Appellants contend that the agreement between the Township and K2 contravenes this section of the PCCA because it essentially prohibits Appellants, as registered, qualified construction code officials, from performing inspections in the Township.

■ Following argument on the matter,[7] the trial court entered judgment in favor of the Township and K2. In doing so, the trial court determined that the agreement between the Township and K2 did not contravene section 501(d) of the PCCA because, contrary to Appellants' allegation, they were *not* prohibited from performing electrical inspections within the Township. In fact, the trial court noted that Appellants conceded as much in their stipulation of facts by stating that they could "perform electrical inspections for property owners or contractors in [the Township], *even though these inspections are not used by [the Township] in determining compliance with the [UCC]."* (Trial ct. Findings of Fact, No. 6, R.R. at 56) (emphasis added). The trial court reasoned that, rather than violate the PCCA, the agreement "simply facilitates the administration and enforcement of the [PCCA] as authorized by subsection (b)(2)." (Trial ct. op. at 6.) The trial court then stated:

> Subsection (b)(2) plainly states that a municipality may retain "*one* or more construction code officials or third-party

---

6. Similarly, a "[m]unicipal code official" is defined as "[a]n individual employed by a municipality or more than one municipality and certified by the Department ... under this act to perform plan review of construction documents, inspect construction *or* administer and enforce codes and regulations under this act or related acts." 35 P.S. § 7210.103 (emphasis added).

7. In the action against the Township and K2, Appellants also sought monetary damages on behalf of SCI. The trial court granted the motion filed by Appellants to bifurcate the trial into issues of liability and damages, and the parties subsequently submitted joint stipulations of fact, submitted briefs and presented argument in support of their respective positions on the issue of liability and statutory construction.

agencies" to administer and enforce the [PCCA].... Administration and en- forcement necessarily includes the per- formance of inspections. In that regard, [the Township] has retained K2 as its third-party agent, as authorized by the [PCCA], to administer and enforce the [PCCA] by performing inspections to determine compliance with the [UCC]. 35 P.S. § 7210.501(b)(2).

(Trial ct. op. at 6–7, R.R. at 59–60) (italics in original, underlining added). The trial court concluded that the words of the PCCA were clear and free of all ambigui- ty; therefore, in interpreting the statute, it could not disregard that clear language under the pretext of pursuing its spirit. 1 Pa.C.S. § 1921(b). (Trial ct. Conclusions of Law, Nos. 1–3.) Following the trial court's denial of their motion for post-trial relief, Appellants now appeal to this court.[8]

On appeal, Appellants argue that the trial court employed flawed reasoning and, therefore, erred in determining that the PCCA permits a municipality to designate, appoint or contract with a single person or entity to act as the municipality's exclusive inspector for purposes of determining UCC compliance. We agree.

In its opinion, the trial court finds no violation of section 501(d) of the PCCA, which expressly prohibits a municipality from preventing qualified construction code officials from *performing inspections* in the municipality, concluding that the Township imposed no such prohibition. The trial court then focuses on the plain language of subsection 501(b)(2) of the PCCA, which expressly allows a municipal- ity to retain *one* or more construction code officials or third-party agencies to act on behalf of the municipality for *administra- tion and enforcement* of the PCCA. Based on the premise that *administration and enforcement necessarily includes the performance of inspections,* the trial court holds that the Township acted appropri- ately in retaining K2 to *administer and enforce* the PCCA by *performing all re- quired inspections.* Although we recog- nize that administration and enforcement of the PCCA unquestionably demands that inspections be performed, we agree with Appellants that, in construing the PCCA, the terms "administer and enforce" must be considered separately from the term "inspect." Only in this way is it possible to give effect to both statutory provisions.[9]

This position is supported by the mark- edly different dictionary definitions of the terms "administration," "enforcement" and "inspection."[10] Moreover, it is evidenced

---

**8.** Because this appeal poses a pure issue of law related to the proper interpretation of the PCCA, our scope of review is plenary. *Koken v. Reliance Insurance Company,* 586 Pa. 269, 893 A.2d 70 (2006).

**9.** The rules of statutory construction provide that every statute shall be construed, if possi- ble, to give effect to all its provisions so that no provision is "mere surplusage." 1 Pa.C.S. § 1921(a); *Lycoming–Clinton County Mental Health/Mental Retardation Program v. Depart- ment of Public Welfare,* 884 A.2d 382 (Pa. Cmwlth.2005).

**10.** Words and phrases in a statute that are not defined therein must be construed according to their common and approved usage, 1 Pa.

C.S. § 1903, and courts generally resort to dictionary definitions to provide their mean- ings. *P.R. v. Department of Public Welfare,* 759 A.2d 434 (Pa.Cmwlth.2000), *appeal al- lowed in part,* 564 Pa. 504, 769 A.2d 1116 (2001). To that end, we note that: "adminis- tration" is defined as "[t]he management or performance of the executive duties of a gov- ernment, institution, or business," (Black's Law Dictionary 46 (8th ed.2004)); "enforce- ment" is defined as "[t]he act or process of compelling compliance with a law, mandate, command, decree, or agreement," (*Id.* at 569, 769 A.2d 1116); and "inspection" is defined as "[a] careful examination of something ... (to determine ... fitness....)." (*Id.* at 812, 769 A.2d 1116). As evidenced by these defini- tions, each word implicates a different action.

in the definition section of the PCCA itself, which delineates three distinct services that may be performed by a "construction code official," "municipal code official" or "third-party agency." Specifically, these entities are qualified to: (1) perform plan review of construction documents; (2) inspect construction *or* (3) administer and enforce codes and regulations. Section 103 of the PCCA, 35 P.S. § 7210.103. Subsection 501(b)(2) of the PCCA authorizes a municipality to retain a particular construction code official or third-party agency to act on its behalf *only* for "administration and enforcement" of the PCCA,[11] 35 P.S. § 7210.501(b)(2); at the same time, section 501(d) of the PCCA provides that a municipality may not prohibit a qualified construction code official from performing "inspections" in the municipality, 35 P.S. § 7210.501(d). Thus, read together, these sections of the PCCA necessarily disallow the present agreement between the Township and K2.[12]

■ By failing to recognize that construction inspections for purposes of the

UCC are a function *separate and distinct* from the administration and enforcement of UCC regulations, the trial court misinterprets section 501(d) of the PCCA and renders the express prohibition in that section a nullity.[13] To deny this effect by concluding that Appellants technically are not prevented from performing electrical inspections in the Township is wholly illusory. No one disputes that Appellants must be allowed to perform electrical inspections in the Township by virtue of their certification, and the trial court is correct in stating that the Township's contract with K2 does not expressly prohibit Appellants from performing such inspections. However, the parties have stipulated that any such inspection would not be accepted as an official UCC inspection, so that "if a non-K2 inspector did a final inspection and found that all [UCC] requirements had been met and reported the same to the Township, then K2 would perform its own inspection to abate or not abate the permit." (Joint Stipulation of Facts, ¶ 10.) Because an electrical inspection that is unacceptable for the purpose of

We note that, in keeping with these differing definitions, this court has held that a code *enforcement* officer, vested with authority under the PCCA and local ordinance to *enforce* a borough's building code, was a "law enforcement officer" as defined in the rules of criminal procedure and, thus, was authorized to issue a summary criminal citation for violations of that code. *Commonwealth v. Daugherty*, 829 A.2d 1273 (Pa.Cmwlth.2003).

11. For some time, courts have recognized the maxim *"expression unius est exclusio alterius,"* which means that the expression of one thing is the exclusion of others not expressed, as an aid to statutory construction. *MacElree v. Chester County*, 667 A.2d 1188 (Pa.Cmwlth. 1995), *appeal denied*, 545 Pa. 666, 681 A.2d 180 (1996).

12. Appellees take the position that section 501(d) of the PCCA has no application to opt-in municipalities, such as the Township, that are governed by section 501(b) of the PCCA,

but, instead, applies only to opt-out municipalities that, being governed by section 501(e) of the PCCA, lose the authority to select which entity does inspections within the municipality. (See Township's brief at 12–13; K2's brief at 10–11.) Because section 501(d) contains no language that can be construed to limit its applicability solely to opt-out municipalities, we flatly reject Appellees' position.

13. The Township asserts that, because Appellants essentially argue that section 501(d) "overrules" the specific language of subsection 501(b)(2), acceptance of Appellants' position would give effect only to section 501(d), in violation of the rules of statutory construction. However, because subsection 501(b)(2) deals only with administration and enforcement, while section 501(d) deals solely with inspections, this is not the case. In addition, the Township apparently fails to see the irony in its argument where, in fact, acceptance of Appellees' position would render section 501(d) ineffective.

issuing a municipal permit is meaningless, and a permit applicant with such an inspection still must obtain and pay for the inspection services of K2,[14] it follows that, realistically, no person or contractor will hire and pay Appellants to perform such inspections.

The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly. 1 Pa.C.S. § 1921(a). As stated, the purpose of the PCCA is to protect the public health, safety and welfare by setting uniform construction standards. To that end, the PCCA requires that those who approve construction plans and inspect the various aspects of construction be properly trained and certified with respect to those standards. *See* section 701 of the PCCA, 35 P.S. § 7210.701. Contrary to Appellees' assertion, accepting inspections performed by any certified inspector for purposes of compliance with the UCC fully satisfies the PCCA's purpose, even if that inspector is a "total stranger." (See Township's brief at 16.) In fact, where the General Assembly voiced its intent to insure the integrity of building inspections for the purpose of issuing municipal permits, allowing a municipality to establish a single entity to serve both as inspector for purposes of compliance with the UCC and as enforcer of UCC standards would run counter to that intent.[15]

Accordingly, for these reasons, we reverse.

*ORDER*

AND NOW, this 6th day of December, 2006, the order of the Court of Common Pleas of Fayette County, dated April 5, 2006, is hereby reversed.

**14.** The Payment Procedures portion of the agreement between the Township and K2 states that K2 must collect "all required Building Permit payment from the project owner at no additional cost to the municipality." (R.R. at 24.)

**15.** Moreover, as Appellants point out, by accepting inspections from any construction code official who meets the requirements of Chapter seven of the PCCA and remains in good standing, a municipality, consistent with the goals of the PCCA, ensures the availability of ample qualified inspectors and, by fostering competition, may help reduce the costs of construction.