**Lance T. HOWELL, Appellant**

v.

**CITY OF ERIE BLIGHTED PROPER-TY, Property Maintenance & Rental License Appeals Board.**

Commonwealth Court of Pennsylvania.

Argued Nov. 12, 2013.

Decided March 12, 2014.

Reargument En Banc Denied April 28, 2014.

Michael Musone, Erie, for appellant.

Kenneth A. Zak, Erie, for appellees.

BEFORE: LEADBETTER, Judge, and McCULLOUGH, Judge (P), and COLINS, Senior Judge.

OPINION BY Judge LEADBETTER.

Lance T. Howell appeals from an order of the Court of Common Pleas of Erie County that affirmed the decision of the City of Erie Blighted Property, Property Maintenance and Rental License Appeals Board (Board) to deny his appeal from a notice of violation issued pursuant to the City's Uniform Construction Code (UCC) [1]

---

1. The City has defined the UCC to include the following:

   [T]his Part Fifteen of the Codified Ordinances [of Erie]; "The International Building Code First Edition 2003" and the "International Residential Code for One—and Two—Family Dwellings 2003," ... and any standards adopted by the City of Erie in this Part Fifteen of the Codified Ordinances under Section 301 of the [Pennsylvania Con-

relating to the minimum headroom clearance for a third-floor stairwell. We reverse.

■ Howell owns the property at issue, a 1926 two-family residential home at 3009 Glenwood Park Avenue, Erie, PA. In June 2012, he filed an application for residential rental registration with the City of Erie, which led to an inspection pursuant to its residential rental licensing program.[2] Subsequently, the inspector issued Howell a notice of violation indicating the following: "Fire & Life Safety; Means of Egress; Interior Stair–60 inches at the top landing and 57–69 at the middle landing." Notice of Violation at 1; Reproduced Record (R.R.) at 38a. The notice also provided that a re-inspection was scheduled in approximately thirty days and that a re-

inspection "[i]ndicate[d] that significant code violation(s) were observed and documented." Id. at 2; R.R. at 39a. Although the City did not specify the UCC provision at issue,[3] Section 1503.21(a)(7)(C)(5) of the UCC sets forth an eighty-inch staircase headroom requirement.[4] Howell appealed to the Board, arguing that the UCC did not apply to his property.[5] In support, he cited Section 1503.11(a) and (b)(1) of the UCC, which provides as follows:

1503.11 SCOPE.

(a) The [UCC] applies to the construction, alteration, repair, movement, equipment, removal, demolition, location, maintenance, occupancy or change of occupancy of every building or structure which occurs on or after July 8, 2004,

---

struction Code Act (PCCA), Act of November 10, 1999, P.L. 491, *as amended*, 35 P.S. § 7210.301].
Section 1501.101 of the UCC; Reproduced Record (R.R.) at 79a. In 1999, the General Assembly enacted the PCCA due to its "[c]oncern that many municipalities in the Commonwealth either had no construction codes or had a confusing multiplicity of construction codes...." *Allegheny Insp. Serv. v. N. Union Twp.*, 912 A.2d 380, 381 (Pa.Cmwlth. 2006). The purpose of the PCCA was "to insure uniform, modern construction standards and regulations through the Commonwealth through the adoption of a [UCC]." *Id.* (footnote omitted).

2. Section 330.03(a) of the City's Landlord and Rental Ordinance (Ordinance) provides as follows: "It shall be unlawful for any person, firm or corporation to operate, let or rent to another for occupancy any residential rental unit in the City of Erie, unless a Residential Rental Registration has been issued by the Code Official." R.R. at 63a.

3. Mindful of the General Assembly's concern in enacting the PCCA, that many municipalities in the Commonwealth had a confusing multiplicity of construction codes, we disapprove the City's failure to cite a specific section of the UCC in the citation at issue.

4. Section 1503.21(a)(7)(C)(5) of the UCC provides as follows:

(a) The City of Erie adopts and incorporates by reference the following codes as the [UCC]:
....
(7) The "International Residential Code 2003."
....
C. Stairway specifications utilized in place of section R–314.2 of the "International Residential Code"
....
5. Stairways may not be less than 3 feet in clear width and clear headroom of 6 feet, 8 inches, shall be maintained for the entire run of the stair.
Section 1503.21(a)(7)(C)(5) of the UCC; R.R. at 82a.

5. The Board's appeal form has three boxes: 1) an appeal from a building code official's decision; 2) an extension of time request; and 3) a request for a variance. Howell chose the first box, selecting the second of three possible grounds for his appeal: the provisions of the Property Maintenance Code do not apply. Howell's Appeal to the Board; R.R. at 41–42a. The three choices outlined when selecting the first box mirror Section 501(c)(2) of the PCCA, 35 P.S. § 7210.501(c)(2).

and all existing structures that are not legally occupied.

> (b) The [UCC] does not apply to:

>> (1) New buildings or renovations to existing buildings for which an application for a permit was made to the City of Erie before July 8, 2004.

Section 1503.11(a) and (b)(1) of the UCC; R.R. at 80a.

At the Board hearing, Howell preserved his legal argument that the UCC did not apply to his property but took the practical step of pursuing a variance under Section 1503.62 of the UCC. The Board denied Howell's appeal and he appealed to the court of common pleas. Common pleas considered his appeal on the certified record and affirmed. The court conducted a statutory construction analysis and, *inter alia,* noted that, although the City's Landlord and Rental Ordinance (Ordinance) does not contain any building specifications that must be met for compliance, it incorporates provisions of other codes that do set forth specific requirements. Noting that the Ordinance defines "residential property" as "a property used or intended to be used for residential purposes,"[6] the court concluded that the City intended for the Ordinance to apply to rental property that existed at the time of the Ordinance's 2006 enactment and into the future. Accordingly, the court concluded that the provisions of the other codes, limiting application to times on or after a particular date, were not dispositive because the Ordinance was enacted with existing and future rental units in mind. Howell's appeal to this Court followed.

■ Howell's arguments go to the legal issue of applicability of the UCC and whether common pleas erred in construing the City's Ordinance and various codes. In addressing the issue of whether the UCC applies to Howell's property, we note that our review over an issue of law is plenary. *Allegheny Insp. Serv. v. N. Union Twp.,* 912 A.2d 380, 384 n. 8 (Pa. Cmwlth.2006).

As noted above, the UCC's scope provision provides that it "applies to the construction, alteration, repair, movement, equipment, removal, demolition, location, maintenance, occupancy or change of occupancy of every building or structure which occurs on or after July 8, 2004, and all existing structures that are not legally occupied." Section 1503.11(a) of the UCC; R.R. at 80a. At the Board hearing, the City did not dispute Howell's testimony that he did not undertake any construction or alteration since July 8, 2004. He emphasized that, since his 1987 purchase of the property, he never applied for a building permit or did any work on his property. In addition, there was no evidence that Howell's property underwent a "change of occupancy" or was not "legally occupied," as those terms are defined in the UCC.[7] Section 102.7 of the Residential Code for One- and Two-family Dwellings (Residential Code) provides as follows:

> The legal occupancy of any structure existing on the date of adoption of this code shall be permitted to continue without change, except as is specifically covered in this code, the *International Property Maintenance Code* or the *International Fire Code* [IFC], or as is deemed necessary by the building offi-

---

**6.** Section 330.02(k) of the Ordinance; R.R. at 62a.

**7.** The UCC defines "Occupancy" as an "approved use of a building or a structure under the [UCC]." Section 1501 of the UCC; R.R. at

79a. The UCC defines "Legally Occupied" as "use or habitation of a building or facility that was occupied in accordance with all valid construction statutes and ordinances in effect before this chapter took effect." *Id.*

cial for the general safety and welfare of the occupants and the public.

Section 102.7 of the Residential Code; Appendix D to Board's Brief at 1. In addition, the exception found in Section 1026.1 of the IFC, which sets forth the requirements for the means of egress in existing buildings, is also applicable. Section 1026.1 of the IFC, including the exception, provides as follows:

General. Means of egress in existing buildings shall comply with Sections 1003 through 1025, except as amended in Section 1026.

*Exception: Mean [sic] of egress [in existing buildings] conforming to the requirements of the building code under which they were constructed shall be considered as complying means of egress if, in the opinion of the fire code official, they do not constitute a distinct hazard to life.*

Section 1026.1 of the 2003 IFC; Appendix B to City's Brief at 128 (emphasis added). Moreover, to construe the term "applies to ... occupancy after July 8, 2004" to include any unchanged continuation of lawful occupancy after that date would mean that all homeowners residing in older properties which did not meet the modern requirements of the UCC would have to retrofit their homes by July 8, 2004, no matter the cost, even if the homes were perfectly safe and lawful on July 7. We believe that would be an absurd result, if not an uncompensated taking, not intended by the General Assembly. Accordingly, we conclude that the UCC does not apply to Howell's property and that, therefore, there was no need for him to seek a variance from an inapplicable requirement.

■ We turn then to determining whether the City nonetheless established grounds for its notice of violation under its police powers, and specifically the safety exceptions in the provisions cited above.

With regard to any potential danger presented by the staircase in question, the City suggests that the code enforcement officer's denial of a license to Howell, in and of itself, is indicative of the officer's opinion that the deficiency in the means of egress constitutes a distinct hazard of life and/or a safety and welfare issue. We disagree.

From the transcript, it is clear that the City did not establish that a staircase less than eighty inches in height constituted a fire hazard, *per se,* or a distinct hazard to life. Although a building code inspector was present at the hearing, he did not testify as to safety. He only expressed his opinion as to the legal applicability of the UCC to Howell's house. The only person to testify as to safety was Howell, who did so in his endeavor to prove the grounds necessary for issuance of a variance. Admitting that the staircase in question was less than the required height, Howell testified generally that he never had a tenant complain about the staircase height, that a fireman would have no problems climbing the stairs under normal circumstances and that a tall person simply could tilt his head. October 17, 2012 Hearing, Notes of Testimony (N.T.) at 15–16; R.R. at 19–20a. In addition, although the Board members at the end of the hearing expressed their concerns regarding safety, their opinions do not constitute the opinion of a fire code official or substantial evidence supporting a finding of a distinct hazard of life and/or a safety and welfare issue.

Accordingly, the only thing established at the hearing was that the staircase in question was less than eighty inches in height, not that it presented a danger to "the general safety and welfare of the occupants and the public" or constituted a safety violation such that it was rendered

non-compliant with the requirements of the building code under which it was constructed. Having concluded that, under the undisputed facts of this case, the UCC is inapplicable to Howell's property and that the City failed to meet its burden that the staircase in question was unsafe, we reverse.[8]

### ORDER

AND NOW, this 12th day of March, 2014, the order of the Court of Common Pleas of Erie County is hereby REVERSED.

---

[8] Having concluded that the UCC is inapplicable to Howell's property and that the City failed to satisfy its burden, we need not address whether common pleas erred in construing the City's Ordinance to effectively override and amend the City's various codes, thus rendering their respective scopes and applicability dates inapplicable and irrelevant.