# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Weis Markets, Inc.              :
                                :
         v.                    :
                                :
Lancaster Township,        :    No. 54 C.D. 2020
               Appellant        :    Argued: December 8, 2020


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
                HONORABLE P. KEVIN BROBSON, Judge[1]
                HONORABLE CHRISTINE FIZZANO CANNON, Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE FIZZANO CANNON         FILED: January 13, 2021


       Lancaster Township (Township) appeals from an order of the Court of Common Pleas of Lancaster County (trial court) that reversed the Township's denial of an application by Weis Markets, Inc. (Weis) for an intermunicipal liquor license transfer (Transfer). The Transfer would allow Weis to sell alcoholic beverages in conjunction with an on-premises restaurant inside a grocery store located in the Township. The Township denied the Transfer based on its conclusion that the Transfer would adversely affect the health, welfare, peace, and morals of the Township and its residents. After reviewing the record before the Township without taking additional evidence, the trial court reversed the Township's denial of the

---

[1] The decision in this case was reached prior to January 4, 2021, when Judge Brobson became President Judge.

Transfer, finding the Township's decision was not supported by substantial evidence. Upon review, we affirm the trial court's order.

## I. **Background**

### A. **Transfer Approval Requirement**

The Pennsylvania Liquor Control Board (PLCB) will normally approve an intermunicipal transfer of a liquor license, regardless of how many other licensed businesses are located in the transferee municipality, provided the transferee meets all statutory and regulatory requirements and the transfer will not adversely affect the health, welfare, peace, and morals of the transferee community within 500 feet of the transferee premises. *See* Section 404(a) of the Liquor Code,[2] 47 P.S. § 4-404; *P&R Beverage, Inc. v. Pa. Liquor Control Bd.*, 219 A.3d 1227, 1235 (Pa. Cmwlth. 2019) (a restaurant is entitled to a liquor license if it satisfies the statutory criteria of the Liquor Code).

However, Section 461(b.3)[3] of the Liquor Code provides that an intermunicipal transfer of a liquor license "must first be approved by the governing body of the receiving municipality when the total number of existing restaurant liquor licenses and eating place retail dispenser licenses in the receiving municipality equal or exceed one license per three thousand inhabitants." 47 P.S. § 4-461(b.3). Section 461(b.3) of the Liquor Code expressly requires that an application to the PLCB for approval of an intermunicipal transfer must include documentation of the transferee municipality's approval. *Id.*; *see Giant Food Stores, LLC v. Penn Twp.*, 167 A.3d 252, 254 (Pa. Cmwlth. 2017) (*en banc*). Thus, if the transferee

---

[2] Act of April 12, 1951, P.L. 90, *as amended*, 47 P.S. §§ 1-101 – 10-1001.

[3] Added by Section 9 of the Act of December 20, 2000, P.L. 992, 47 P.S. § 4-461(b.3).

municipality denies approval, the transfer cannot occur.[4] *See Giant Food*, 167 A.3d at 260 (without prior municipal approval, an intermunicipal transfer application to the PLCB "would be fatally flawed") (original emphasis deleted).

Here, it is undisputed that the number of businesses with liquor licenses in the Township exceeds 1 for each 3,000 residents. Accordingly, an intermunicipal license transfer into the Township requires the Township's approval before the PLCB will authorize the transfer.

## B. Weis's Transfer Application

Weis submitted an application to the Township for approval of the Transfer, which was the subject of a public hearing by the Township on July 11, 2016. Notes of Testimony, Public Hearing – Petition by Weis Markets, Inc. for Intermunicipal Transfer of Liquor License (N.T.) at 1; Reproduced Record (R.R.) at 8.[5] At the hearing, Weis presented information through its attorney, Mark Kozar, Esquire. Also present on behalf of Weis, and available to answer questions, was its Manager of Architectural Department, Alexander Ororbia. N.T. at 2; R.R. at 9. Attorney Kozar stated:

> Weis Markets is a publicly traded company headed in Sunbury, Pennsylvania. Founded in 1912, Weis has grown to 165 stores in five states. Weis employs over 18,000 associates, and the store here in Lancaster

---

[4] Notably, there is no mechanism for the Pennsylvania Liquor Control Board (PLCB) to review a municipality's denial of approval; nor is there any means by which the applicant may request such review *by the PLCB*. Section 461 of the Liquor Code, 47 P.S. § 4-461(b.3); *Giant Food Stores, LLC v. Penn Twp.*, 167 A.3d 252, 255-56 (Pa. Cmwlth. 2017) (*en banc*) (no appeal is permitted *under the Liquor Code* from a municipality's denial of a transfer application). As discussed below, however, a municipality's denial of a transfer application is subject to judicial review under the Local Agency Law, 2 Pa. C.S. §§ 551-555, 751-754.

[5] The Township failed to number its reproduced record in the format (1a, 2a, 3a, *etc.*) as required by Pa. R.A.P. 2173. For clarity, in our references to the reproduced record, we use the Township's page number format in this opinion.

Township has been open since 1962, and employs 115 full and part-time associates. Weis Markets is very active in the local community, is a very good community member. They support the Southern PA Food Bank, the Alpha Omega Food Pantry, Aerials Acres, Lancaster Educational Foundation, Lancaster Science Factory, the YMCA of Central Pennsylvania, and the Breast Cancer Coalition. Why is this important? It's important because Weis has a reputation, and they [sic] have too much to lose to handle alcohol in a way that would diminish their [sic] reputation in the community in any way.

What we are requesting here is nothing new or unusual. Over the past nine years, the PLCB has approved liquor licenses to over 350 grocery store[-]based restaurants including [55] other Weis grocery stores. Here in Lancaster County, Weis has stores in Lititz, Ephrata, Lancaster, West Lampeter, that have liquor licenses and are selling beer. As you can see from the floor plan that was handed out, Weis is going to do a remodel and as part of that remodel will be to have a café in the left front of the store. . . . [A]ll food will be single servings to eat in or to go, prepared in the café. The café will be open for breakfast, lunch, and dinner. The hours of operation will be Monday through Friday, 7:00am to 11:00pm, and Sundays, 9:00am to 11:00pm. There will be a designated restaurant manager who will receive the bureau of liquor control enforcement developed responsible alcohol management program manager training. All café associates will also receive server training. Weis has a 100% carding policy. Everybody gets carded. Weis uses either a card scanner or a cash register lock out system that requires a clerk to look at somebody's ID, punch in their [sic] birthdate before the cash register will take the SKU for beer sales.

And let me just back up a minute and talk about beer sales, because actually since the change in the law you probably all are aware that Act 39[6] signed by the [G]overnor on June 8th becomes effective August 8th and it will permit restaurants to get what are called extended wine licenses

---

[6] Act of June 8, 2016, P.L. 273.

which will permit them to sell up to four bottles of wine and Weis does plan on doing that. Weis will be offering single serve beers for on premise[s] consumption with selling limit of [2] beers for on[-]premise[s] consumption and up to 192 fluid ounces for take-out. All beer must be purchased at the cash register on the licensed premises. None of the other cash registers in the store will accept the SKUs for beer, and the same will be true with bottles of wine. Weis has rotating security cameras that cover the café area. These cameras are monitored by security personnel, in addition the manager and all the associates in the café are physically monitoring the café area. This is not the type of place where people are going to come and hang out and drink because there is a two beer limit. There is no entertainment in the form of video games or pool tables, and there's no smoking. It will be a well-lit[] and secure place for customers, of which, 70% are women, where you can purchase prepared food, and a 6-pack of beer, and a bottle of wine to take home, or to dine in and have a drink. Weis is a responsible owner making a significant investment in the community that will be protected by responsible management and well-trained employees . . . .

N.T. at 3-4; R.R. at 10-11.

In addition, the following colloquy took place between Attorney Kozar and one of the Township supervisors concerning nearby businesses with liquor licenses:

Ms. Wasong: We have a Ruby Tuesday right there with a liquor license.

Mr. Kozar: And they don't sell beer to go.

Ms. Wasong: No, but the House of Pasta that directly abuts Weis parking lot can, and a few blocks down the road there is another, and there is a beer distributor in the shopping center.

Mr. Kozar: But you can't buy a six-pack of beer in a beer distributor, and that's their point.

5

Ms. Wasong: But you can buy a 12-pack.

Mr. Kozar: What if I don't want to buy a 12-pack?

N.T. at 6; R.R. at 13.

Attorney Kozar's statements constituted the entirety of the evidence presented at the hearing;[7] no evidence was offered to counter Weis's evidence. *See generally* N.T. at 1-7; R.R. at 8-14. Notably, in its subsequent adjudication, the Township found Weis "presented testimony" at the hearing, and further found as a fact: "The evidence described the proposed café and the manner in which Weis . . . would operate the café in compliance with applicable Commonwealth laws and regulations for the sale of alcoholic beverages." Adjudication, Finding of Fact Nos. 7, 10; R.R. at 24.

One member of the public spoke in favor of the Transfer, pointing out the convenience of avoiding "an extra stop" by picking up a bottle of wine while at the grocery store. N.T. at 4-5; R.R. at 11-12. No member of the public opposed the Transfer. *See generally* N.T. at 1-7; R.R. at 8-14.

At the conclusion of the hearing, the Township's supervisors declined the opportunity to ask questions or extend their time for making a decision. N.T. at 6-7; R.R. at 13-14. Instead, they made comments expressing general concerns about the number of nearby licensed premises, without tying those concerns to any record evidence. *See* N.T. at 7; R.R. at 14. They then voted unanimously to deny the Transfer. *Id.* In its subsequent written adjudication, the Township listed the nearby businesses with liquor licenses and stated a bare conclusion that the Transfer was denied because it would adversely affect the health, welfare, peace, and morals of

---

[7] No one objected to the admission of Attorney Kozar's statements as evidence.

6

Township residents.[8] Adjudication at 3-4, Findings of Fact Nos. 12-14, Conclusion of Law No. 5; R.R. at 25-26. The adjudication did not cite any evidence in the record in support of that conclusion. *See id.*

Weis appealed the Township's decision to the trial court, which decided the appeal on the Township's record without taking additional evidence.[9] Trial Ct. Op. at 1; R.R. at 138. After reviewing the record, the trial court entered an order reversing the Township's denial of the Transfer. Trial Ct. Order; R.R. at 137. The trial court concluded there was no evidence in the record to support the Township's subjective concerns about the effect of the Transfer on the Township's residents; to the contrary, all of the evidence demonstrated there would be no adverse effect. Trial Ct. Op. at 2-7; R.R. at 139-44.

This appeal by the Township followed.[10]

---

[8] The Township also concluded the Transfer was not necessary to the Township's economic development. Adjudication at 4, Conclusion of Law No. 5; R.R. at 26. However, the parties agree that conclusion is not relevant, as that was not the basis upon which Weis requested approval of the Transfer. Trial Ct. Op. at 3 n.2.

[9] Neither party suggests there is additional evidence that the trial court should have admitted or considered.

[10] The current version of Section 461(b.3) of the Liquor Code expressly provides there is no appeal from a municipality's denial of a liquor license transfer application. However, in *Giant Food*, this Court determined that Section 751(a) of the Local Agency Law, 2 Pa. C.S. § 751(a), provides a right of appeal from an adjudication by a township as a local agency, *including a denial of an intermunicipal transfer of a liquor license*, even though Section 461(b.3) provides no appeal *under the Liquor Code*. *See Giant Food*, 167 A.3d at 256-61. The parties here do not dispute that this appeal is governed by the provisions of the Local Agency Law.

In an appeal under the Local Agency Law, where the agency record is complete, the trial court decides the appeal based on the agency record, without holding a *de novo* hearing. *See* 2 Pa. C.S. § 753(b). In that instance, the trial court's review is limited to determining whether the local agency's adjudication violated the appellant's constitutional rights, was not in accordance with applicable law, or violated the rules of practice and procedure before local agencies, or whether a necessary finding of fact was not supported by substantial evidence. 2 Pa. C.S. § 754(b).

Our review is similarly limited. In an appeal concerning a local agency's adjudication, where a complete record was developed before the agency, our review on appeal from the trial

7

## II. Issues

Section 461(b.3) of the Liquor Code provides that a municipality "may" approve an application for an intermunicipal license transfer. 47 P.S. § 4-461(b.3). Section 461(b.3) imposes no express limitation on a municipality's exercise of its discretion in granting or denying approval of a transfer. The two interrelated central issues of this appeal are whether the Township was required to support its denial of the Transfer with substantial evidence, and whether it abused its discretion by denying the Transfer in the absence of such evidence.

## III. Discussion

## A. Substantial Evidence

The Township based its denial of the Transfer on its conclusion that the Transfer would adversely affect the health, welfare, peace, and morals of the Township's residents. The trial court found the Township's denial of the Transfer was not supported by substantial evidence. We agree.

Granting a liquor license is not inherently detrimental to a community's health, welfare, peace, and morals. *K&K Enters., Inc. v. Pa. Liquor Control Bd.*, 602 A.2d 476, 480 (Pa. Cmwlth. 1992); *In re 23rd St., Inc.*, 517 A.2d 581, 582 (Pa. Cmwlth. 1986). Rather, this Court has found that specific, objective evidence from a municipality is required to support a finding that a liquor license transfer will have a detrimental effect on the community; statements of general concern, without specific details, do not constitute substantial evidence in support of a transfer denial. *See, e.g.*, *AWT Beaver Indep. Deli, Inc. v. Pa. Liquor Control Bd.*, 876 A.2d 500, 505 (Pa. Cmwlth. 2005); *Boston Concessions Grp., Inc. v. Logan Twp. Bd. of*

---

court is limited to determining whether the agency violated constitutional rights, committed errors of law, failed to adhere to statutory procedure requirements, or made necessary findings of fact not supported by substantial evidence. *Id.*; *Kovler v. Bureau of Admin. Adjudication*, 6 A.3d 1060, 1062 n.1 (Pa. Cmwlth. 2010).

8

*Supervisors*, 815 A.2d 8, 13 (Pa. Cmwlth. 2002) (testimony asserting saturation of existing businesses with liquor licenses, and raising concerns that transfer of an additional license would increase traffic and parking issues and devalue other local licenses "was at most, general and speculative" and did not demonstrate the transfer would be adverse to the local welfare, health, and morals); *23rd St.*, 517 A.2d at 582 (objections asserting potential problems and perceived threats to the character of the neighborhood from additional liquor consumption did not constitute substantial evidence for a license denial); *cf. Manayunk Dev. Corp. v. Pa. Liquor Control Bd.*, 715 A.2d 518, 521-22 (Pa. Cmwlth. 1998) (substantial evidence supported denial of transfer where there was testimony of city council member describing extensive efforts to control local parking, civil engineer who performed traffic study, and urban planner who stated any increase in seating capacity at local restaurant would exacerbate existing parking deficit).[11]

Additionally, although Section 404(a) of the Liquor Code allows the *PLCB* to consider whether other licensed businesses are within 200 feet of a proposed transferee business, there is no parallel provision where a municipality is considering an intermunicipal license transfer request. Moreover, and contrary to the Township's argument, even where a transfer denial is permissibly based on the proximity of other licensed properties to the premises at issue, there must be evidence to establish precisely the relevant distance. *See, e.g.*, *P&R Beverage*, 219 A.3d at 1229-30 (the 200-foot measurement is from the nearest point of the proposed licensed premises to the nearest point of each existing licensed business; for a

---

[11] This Court decided the cited cases under the previous version of Section 461(b.3) of the Liquor Code, *former* 47 P.S. § 4-461(b.3). As discussed in the next section, the current version of the statute contains different language concerning the Township's discretion to approve or deny a license transfer. However, for purposes of what constitutes substantial evidence, the cited authorities are still applicable.

grocery store proposing to install a restaurant area where alcohol can be purchased, the measurement is from the nearest point of the restaurant area, not from the edge of the grocery store building); *Arrington v. Pa. Liquor Control Bd.*, 667 A.2d 439, 445 (Pa. Cmwlth. 1995) (error by the PLCB, and subsequently by the reviewing court, in relying on close proximity of other licensees to demonstrate adverse effect of proposed transfer, were "manifest" where there was no evidence of relevant distance measurements).

Here, Weis offered evidence that it is active in supporting the local community and has a good reputation; it has 55 other grocery stores with liquor licenses, including 4 locations in Lancaster County; the designated restaurant manager will receive training from the Bureau of Liquor Control Enforcement in responsible alcohol management program manager training, and all café associates will receive server training; Weis will use either a card scanner or a cash register lock out system that requires a clerk to look at each customer's identification and punch in the birthdate before the cash register will take the SKU for beer sales; there will be a selling limit of 2 beers for on-premises consumption and no more than 192 fluid ounces (by our calculation, the equivalent of two 6-packs of 16-ounce cans or bottles) for take-out; and rotating security cameras, monitored by security personnel, will cover the café area in addition to restaurant personnel who are physically monitoring the café area. N.T. at 3-4; R.R. at 10-11. Notably, the Township did not reject any of Weis's evidence; to the contrary, the Township found Weis offered evidence that "described the proposed café and the manner in which *Weis . . . would operate the café in compliance with applicable Commonwealth laws and regulations* for the sale of alcoholic beverages." Adjudication, Finding of Fact No. 10; R.R. at 24 (emphasis added). We agree with Weis that it presented substantial evidence that

10

the Transfer would not adversely affect the health, welfare, peace, and morals of the Township or its residents.

By contrast, the Township offered neither its own evidence nor any challenge to Weis's evidence. The Township supervisors' comments were general expressions of concern of the type deemed insufficient in *AWT*, *Boston Concessions*, and *23rd St*. To the extent those comments related to the alleged proximity of other licensed businesses, no supporting measurements were presented as required by *Arrington*.[12] In any event, the Township supervisors' comments did not constitute evidence. *Accord Howell v. City of Erie Blighted Prop.*, 87 A.3d 949, 953 (Pa. Cmwlth. 2014) (comments by members of city's rental license appeal board at the end of a hearing, expressing their concerns regarding safety, did not constitute substantial evidence supporting a finding of a distinct hazard or safety and welfare issue on the licensed property). Thus, the record does not contain any evidence establishing the number of other licensed businesses in the area or their alleged proximity to the Weis store at issue.

Because the record contains *no* evidence of any adverse effect on the Township or its residents, we need not determine the sufficiency of the evidence. We find the trial court correctly determined there was not substantial evidence to support the Township's denial of the Transfer. Indeed, there was *no* evidence that supported denying the Transfer. To the extent the Township was required to base its decision on substantial evidence, its denial of the Transfer was in error.

---

[12] Moreover, Weis correctly observes that the Township did not mention Section 404(a) of the Liquor Code in its adjudication, nor did it base its adjudication on any finding that other licensed businesses were within 200 feet of the proposed location of the restaurant inside Weis's grocery store in the Township.

11

## B. **Abuse of Discretion**

However, the absence of substantial evidence does not end our inquiry. The Township argues it had unfettered discretion to deny the Transfer, even if the denial was not supported by any evidence.

In general, an abuse of discretion in relation to a license transfer request consists of a misapplication of the law, a manifestly unreasonable exercise of judgment, or a decision resulting from partiality, prejudice, bias, or ill-will. *Arrington*, 667 A.2d at 441 (citing *Centrum Prime Meats, Inc. v. Pa. Liquor Control Bd.*, 455 A.2d 742, 745 (Pa. Cmwlth. 1983)); *see Mielcuszny v. Rosol*, 176 A.2d 236, 237 (Pa. 1934); *Pa. Liquor Control Bd. v. George Roscoe, Inc.*, 431 A.2d 1119, 1121 (Pa. Cmwlth. 1981). In *Arrington*, this Court found the PLCB abused its discretion by denying a license transfer based on a finding that the transfer would adversely affect the health, welfare, peace, and morals of the neighborhood, where there was no evidence in the record to support that finding. *Arrington*, 667 A.2d at 447.

Here, Weis contends the Township abused its discretion by denying the Transfer based on a finding, not supported by evidence, that the Transfer would adversely affect the health, welfare, peace, and morals of the Township's residents. As the party asserting an abuse of discretion, Weis has the burden of proving such an abuse; it is not the Township's burden to further support its decision. *See Malt Beverage Distribs. Ass'n v. Pa. Liquor Control Bd.* (Pa. Cmwlth., No. 900 C.D. 2009, filed Jan. 7, 2010), slip op. at 32, 2010 Pa. Commw. Unpub. LEXIS 272 (unreported)[13] (citing *Leckey v. Lower Southampton Twp. Zoning Hearing Bd.*, 864 A.2d 593, 596 n.4 (Pa. Cmwlth. 2004)).

---

[13] We cite this unpublished decision as persuasive authority pursuant to our Internal Operating Procedures. 210 Pa. Code § 69.414(a).

12

As discussed above, Weis is correct in asserting that the record contains no evidence in support of the Township's decision. Therefore, if the Township's exercise of its discretion pursuant to Section 461(b.3) of the Liquor Code requires support by record evidence, then it abused its discretion in denying Weis's intermunicipal license transfer request.

The Township, however, insists the legislature, by amending the language of Section 461(b.3) of the Liquor Code, has given municipalities unfettered discretion to deny intermunicipal license transfers. We disagree.

Section 461(b.3) previously provided, in pertinent part: "The municipality *must approve* the request *unless it finds* that doing so would adversely affect the welfare, health, peace and morals of the municipality or its residents." *Former* 47 P.S. § 461(b.3) (emphasis added). However, the legislature amended Section 461(b.3) in 2006. It now provides, in pertinent part: "The municipality *may approve* the request." 47 P.S. § 461(b.3) (emphasis added). Moreover, the legislature eliminated the requirement of a finding, before denying a request, that the requested transfer would adversely affect the welfare, health, peace, and morals of the municipality or its residents. *See id.*

The Township argues that its discretion is now unfettered and it requires no evidence to support its decision denying the Transfer. Accordingly, we must determine whether there are any limits on the discretion conferred to the Township in Section 461(b.3) the Liquor Code.[14]

---

[14] We note that this case involves only potential *statutory* limits on the Township's discretion; as Weis does not question the *constitutionality* of the legislature's alleged conveyance of unfettered discretion to municipalities to deny intermunicipal license transfers, we do not consider any constitutional issues here. *Accord Malt Beverage Distribs. Ass'n v. Pa. Liquor Control Bd.* (Pa. Cmwlth., No. 900 C.D. 2009, filed Jan. 7, 2010), slip op. at 32 n.5, 2010 Pa. Commw. Unpub. LEXIS 272 (unreported) (noting, in regard to an intermunicipal license transfer

The trial court relied on *SSEN, Inc. v. Borough Council of Eddystone*, 810 A.2d 200 (Pa. 2002), in which this Court affirmed a trial court's reversal of a municipality's adjudication denying an intermunicipal liquor license transfer, finding the municipality's decision was not supported by substantial evidence. However, the Township correctly asserts that because our decision in *SSEN* predated the 2006 amendment of the language of Section 461(b.3) of the Liquor Code, that decision does not resolve the question of whether a municipality's discretion to deny an intermunicipal transfer remains subject to any limitations under the amended language of Section 461(b.3).

We find guidance instead in *Giant Food*, in which this Court considered the interplay of Section 461(b.3) of the Liquor Code with Section 751(a) of the Local Agency Law, 2 Pa. C.S. § 751(a). The issue in *Giant Food* was whether an appeal to a court would lie from a township's denial of an intermunicipal license transfer request, notwithstanding the express provision in Section 461(b.3) that there is no appeal from such a denial. This Court concluded that Section 751(a) of the Local Agency Law provided a right of appeal, pointing to its applicability "regardless of the fact that a statute expressly provides that there shall be no appeal from an adjudication of an agency . . . ." 2 Pa. C.S. § 751(a); *see Giant Food*, 167 A.3d at 256-57.

Of significance here, the dissent in *Giant Food* took the same position advocated here by the Township, arguing that the legislature's 2006 amendment of Section 461(b.3), by making municipal approval of license transfers discretionary

---

to allow the sale of beer for takeout in connection with a grocery store business, that this Court would not consider any constitutional issues regarding the Liquor Code's failure to impose statutory limits on the Board's discretion to approve interior connections between the licensed area and the rest of the grocery store, where the petitioners did not challenge the constitutionality of the PLCB's unlimited discretion in that regard).

14

and expressly stating there could be no appeal from denial of a transfer, intended to confer unfettered discretion on municipalities in approving or denying transfer requests. *See Giant Food*, 167 A.3d at 261 nn.22-23, 264 (summarizing dissent's conclusion that the legislature intended to convey to municipalities the exclusive right to approve or deny intermunicipal license transfers as they see fit, and not subject to any review, as long as they follow the statutory process). The majority rejected this argument. Observing that "[s]uch unfettered discretion would permit a municipality to deny an intermunicipal transfer of a liquor license for any reason, even an unlawful one[,]" the majority explained:

> [We agree that Section 461(b.3)] reflects the General Assembly's intention that local government should decide this local issue. However, the General Assembly also promulgated the Local Agency Law which provides for review even where a statute denies a right to appeal. Thus, *the General Assembly clearly intended that local agency adjudications may not remain isolated and insulated from any review, especially where such decisions may be improperly impacted by abuses of discretion* or motivated by unlawful discrimination.

*Id.* at 261 & n.22 (emphasis added).

Although this Court's discussion in *Giant Food* related to whether there was a right of appeal, rather than a municipality's level of discretion, the two issues are related. Our analysis in *Giant Food* is equally applicable here. In *Giant Food*, we essentially concluded the legislature could not have intended to allow a municipality to abuse its discretion with impunity. Applying that principle here, we similarly find that despite the absence of express limiting language in Section 461(b.3), the legislature could not have intended to confer unfettered discretion on

15

municipalities to deny intermunicipal license transfers. Thus, although broad, municipalities' discretion in making such transfer decisions is not unlimited.[15]

Because we find the Township's discretion is not unfettered, we conclude that in the absence of *any* supporting evidence to support its determination that the Transfer would have an adverse effect on the Township and its residents, the Township's adjudication constituted a misapplication of the law and a manifestly unreasonable exercise of judgment, and therefore was an abuse of discretion. *See Arrington*, 667 A.2d at 441. Thus, the trial court correctly reversed the Township's denial of the Transfer.

## IV. Conclusion

Based on the foregoing discussion, the trial court's decision is affirmed.

_____
CHRISTINE FIZZANO CANNON, Judge

---

[15] By providing that a municipality "may" approve a license transfer, the language of Section 461(b.3) implies a degree of discretion. Potentially, there could be a number of valid bases on which a municipality might approve or deny a transfer request. However, we need not determine or enumerate those various bases here. The sole basis of the Township's denial of the Transfer was its conclusion that the Transfer would adversely affect the health, welfare, peace, and morals of the Township and its residents. Adjudication at 4, Conclusion of Law No. 5; R.R. at 26. Therefore, that is the only basis at issue here.

16

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Weis Markets, Inc.                        :
                                          :
              v.                          :
                                          :
Lancaster Township,                       :    No. 54 C.D. 2020
                    Appellant             :

# O R D E R

AND NOW, this 13th day of January, 2021, the order of the Court of Common Pleas of Lancaster County is AFFIRMED.

_____
CHRISTINE FIZZANO CANNON, Judge